KING v MICHIGAN STATE POLICE DEPARTMENT

Docket No. 305474. Submitted February 13, 2013, at Detroit. Decided
November 12, 2013, at 9:10 a.m.

    Barry L. King and Christopher K. King were, respectively, the father
and brother of Timothy King. An attorney filed a request under
the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, on
Barry King's behalf, seeking documents from the Michigan State
Police Department (MSP) regarding Christopher Busch's possible
involvement in a series of unsolved crimes in the mid-1970s known
as the Oakland County Child Killings. Busch had briefly been
considered a suspect in the murder of the first victim, but was
allegedly cleared by law enforcement officials following a poly-
graph examination. Timothy King was the final victim of the
killing spree, and Busch committed suicide about 1½ years later.
The MSP granted the request with respect to nonexempt records
in its possession that fell within the scope of the request and
estimated a total fee of $11,525.49 to locate and provide the
requested documents, requesting a deposit of ½ of the estimate to
proceed. Another attorney from the law firm sent the MSP a letter
questioning whether any files were exempt and stating that King
wanted only those files related to Busch. He enclosed a check for
the deposit. Barry King then filed a complaint in the Oakland
Circuit Court against the MSP, alleging that it had not identified
the materials claimed to be exempt and demanding that it identify
any purportedly exempt materials before proceeding. The MSP
filed an answer and affirmative defenses, asserting that the first
FOIA request submitted was not made in a representative capacity
and did not identify King as the requester and further asserting
that the court lacked jurisdiction. Plaintiffs filed a request for
several admissions. The court, Colleen A. O'Brien, J., permitted
the addition of Christopher King, who had previously made similar
FOIA requests to the MSP and received the same response, as a
plaintiff. After plaintiffs paid the balance of the fees owed, the
MSP produced what it deemed to be the nonexempt records,
stating that the FOIA request was granted in part and denied in
part. The MSP stated that certain materials were withheld under
MCL 15.243(1)(d) as records specifically exempted from disclosure
by statute. The MSP then moved for summary disposition, arguing

that plaintiffs had brought their action prematurely because they filed it before the MSP had denied the requests or had a chance to make a final determination after having searched for and reviewed the documents and separated exempt from nonexempt information. The MSP further contended that the case was moot because it had provided plaintiffs with the nonexempt records in its possession. In addition, the MSP asserted that plaintiffs were not entitled to attorney fees and costs because the court had not ordered disclosure of records and plaintiffs were therefore not prevailing parties as defined in the FOIA. Plaintiffs opposed the motion, arguing that a dispute existed regarding the appropriate processing fee given that only ⅓ of the documents provided were related to Busch. Plaintiffs also asserted that they were entitled to attorney fees. The MSP also argued that, in the interest of judicial economy, plaintiffs' brief opposing the summary disposition motion should be treated as plaintiffs' appeal of the MSP's final decision to uphold the partial denial of the FOIA requests. The court denied the MSP's summary disposition motion and treated plaintiffs' response to the motion as an appeal of the partial denial. The court ordered the MSP to reimburse plaintiffs $5,600 for documents provided that were not covered by plaintiffs' request, upheld the denial of some documents, and ordered the MSP to produce the polygraph examination reports for the court's in camera review. Subsequently, the court held that the reports were exempt from disclosure under MCL 15.243(1)(d). Following a hearing, the court concluded that $2,500 in attorney fees was a fair and reasonable sanction for the MSP to pay plaintiffs. Plaintiffs appealed, and the MSP cross-appealed.

The Court of Appeals *held*:

1. The trial court did not err by ruling that the polygraph examination reports were exempt from disclosure. MCL 15.243(1)(d) exempts from disclosure under FOIA records or information specifically described and exempted from disclosure by statute. MCL 338.1728(3), a provision of the Forensic Polygraph Examiners Act (FPEA), MCL 338.1701 *et seq.*, provides that any recipient of information, reports, or results from a licensed polygraph examiner, other than the person tested, may not disclose the information, reports, or results to a third party except as required by law or the administrative rules promulgated under the act. The MSP was the recipient of information covered by this provision, and because no law or rules required disclosure, the MSP was prohibited from disclosing it. Accordingly, because the polygraph examination reports were exempt from disclosure by the FPEA, they were likewise exempt under FOIA.

2. The trial court abused its discretion by ordering the MSP to pay attorney fees as sanctions for its refusal to admit that Barry King had standing to file his FOIA action. Under MCR 2.312(A), a party in a civil case may request admissions from the other party before trial. MCR 2.313(C) provides that if a party denies the genuineness of a document or the truth of a matter as requested and the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The trial court must enter the order unless (1) the request was held objectionable, (2) the admission sought was of no substantial importance, (3) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or (4) there was other good reason for the failure to admit. The parties here did not settle the matter that was the subject of the requests for admissions, i.e., whether Barry King had standing because the law firm that submitted the FOIA request did so in a representative capacity for Barry King, and the issue became moot when Christopher King was added to the case because he was seeking the same records on the basis of his own FOIA request. Although the MSP challenged Barry King's standing in its affirmative defenses, it did not file a dispositive motion raising the issue, and the trial court did not decide that issue. Plaintiffs thus did not prove the truth of the matter regarding which they requested admissions because there was no hearing or trial at which plaintiffs were required to do so. Accordingly, the trial court abused its discretion by awarding attorney fees to plaintiffs as a discovery sanction.

3. The trial court erred by requiring the MSP to refund a portion of the costs charged for processing plaintiffs' FOIA requests. MCL 15.234(1) provides that a public body may charge a fee for a public record search, the necessary copying of a public record for inspection, or providing a copy of a public record. The fee must be limited to actual mailing costs and the actual incremental cost of duplication or publication, including labor, the cost of the search, examination, and review and the deletion and separation of exempt from nonexempt information. MCL 15.234(2) provides that the public body may require a good faith deposit when the request is made if the fee will exceed $50, but the deposit may not exceed ½ of the total fee. The trial court's decision was clearly erroneous because the court did not provide a factual basis for reducing the MSP's processing fee to $5,600. The MSP was entitled to reimbursement for the costs incurred in honoring plaintiffs' FOIA request. The MSP's assistant FOIA coordinator set forth in detail the manner in which the fee was calculated. The

total fee of $10,667.15 was made up of $9,267.47 for the labor costs of searching for, retrieving, examining, and reviewing records to separate exempt from nonexempt material and $1,399.68 for photocopying. Although plaintiffs claimed that their request was limited to information regarding Busch and that approximately ⅔ of the documents provided did not involve Busch, the FOIA coordinator explained that the individuals involved in the investigation were so closely intertwined that the documents could not be separated. Moreover, even assuming that the MSP could have reduced its photocopying charges by providing fewer pages, it would not have reduced the total processing costs to $5,600 because the photocopying came to only $1,399.68 of the total fee and the remaining amount was for retrieving and reviewing the records and separating exempt from nonexempt material. The trial court's determination of the processing fee had to be vacated and the case remanded for calculation of the fee using facts contained in the record.

4. The trial court did not err by denying the MSP's motion for summary disposition under MCR 2.116(C)(8), premised on the ground that plaintiffs had filed their FOIA claims prematurely, before the MSP denied their FOIA requests. MCL 15.235(7) provides that if a public body makes a final determination to deny in whole or in part a request to inspect or receive a copy of a public record or portion of that public record, the requesting person may (1) appeal the denial to the head of the public body or (2) commence an action in the circuit court. Although the MSP contended that it had granted plaintiffs' requests, its response letters reflect that the requests were effectively granted in part and denied in part because the letters contemplated the separation of exempt material and thereby implicitly denied the requests with respect to that material. Therefore, plaintiffs' claims were filed after the MSP had effectively denied their FOIA requests with respect to potentially exempt materials and they did not file the action prematurely. Moreover, after plaintiffs filed this action, the MSP expressly indicated that it was denying a portion of their requests, and it subsequently urged the trial court to treat plaintiffs' brief as an appeal of the MSP's decision to uphold the partial denial. Therefore, even if plaintiffs had originally filed their action prematurely, the premature filing would have become irrelevant at that point. A party cannot argue on appeal that an action it stipulated was erroneous.

5. The trial court did not err by denying the MSP's motion for summary disposition under MCR 2.116(C)(10), premised on the ground that plaintiffs' claims were rendered moot after it pro-

duced some of its records. The MSP did not produce all of its records. Plaintiffs contested the MSP's asserted exemptions for some withheld documents and sought to depose the FOIA coordinator. Plaintiffs also sought attorney fees and a partial refund of the processing fee. Therefore, the MSP's disclosure of some documents did not make it impossible for the trial court to grant relief to plaintiffs, and plaintiffs' claims were not moot.

Affirmed in part, vacated in part, reversed in part, and remanded for further proceedings.

RECORDS — FREEDOM OF INFORMATION ACT — DISCLOSURE — EXEMPT RECORDS — POLYGRAPH EXAMINATION RESULTS.

The Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, exempts from disclosure records or information specifically described and exempted from disclosure by statute; the Forensic Polygraph Examiners Act (FPEA), MCL 338.1701 *et seq.*, provides that any recipient of information, reports, or results from a licensed polygraph examiner, other than the person tested, may not disclose the information, reports, or results to a third party except as required by law or the administrative rules promulgated under the act; accordingly, polygraph examination reports that are exempt from disclosure under the FPEA are likewise exempt under FOIA (MCL 15.243(1)(d); MCL 338.1728(3)).

Barry L. King *in propria persona* and for Christopher K. King.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Kathleen L. Cavanaugh*, Assistant Attorney General, for the Michigan State Police Department.

Before: MURRAY, P.J., and WILDER and OWENS, JJ.

WILDER, J. Plaintiffs appeal as of right an order awarding attorney fees to plaintiffs and closing the case. Defendant cross-appeals as of right the same order. We affirm in part, vacate in part, reverse in part, and remand for further proceedings consistent with this opinion.

This case arises out of requests under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, submitted in 2010 to defendant, the Michigan State Police Department, for documents regarding Christopher Busch's possible involvement in the abductions and killings of four children in Oakland County in 1976 and 1977, a series of crimes known as the Oakland County Child Killings (OCCK or OCCKs). Plaintiffs, Barry L. King and Christopher K. King, are, respectively, the father and the brother of Timothy King, the fourth and final victim of the OCCKs. In January and February 1977, after three of the children had been killed, Busch was briefly considered a suspect in the murder of the first OCCK victim, but he was allegedly cleared by law-enforcement officials following a polygraph examination. Then, in March 1977, Timothy King was abducted and killed. In November 1978, Busch died in an apparent suicide. The OCCKs remain unsolved to this day, but numerous persons other than Busch have been considered as possible suspects over the last 35 years.

On January 6, 2010, attorney William H. Horton of the law firm Giarmarco, Mullins & Horton, P.C., submitted a cover letter and FOIA request to defendant for documents regarding Busch and another deceased suspect in the OCCKs, Gregory Green. The cover letter did not indicate that Horton was making the request for plaintiffs in a representative capacity. However, attached to the cover letter was defendant's standard FOIA request form that had been completed for the purpose of making the FOIA request. In a space designated as "Your client or insured," the name "Barry King" was listed.

In response, defendant granted the request with respect to "existing, non-exempt records in the possession of the Michigan State Police that fall within the

scope of the request." Defendant provided an estimated total fee of $11,525.49 to locate and provide the requested documents. Defendant further stated that it would proceed upon receipt of a deposit of half of the estimate, which was $5,762.74.

On April 22, 2010, David Binkley, an attorney in the same law firm as Horton, sent a letter to defendant stating that

> the King family does not believe that any of the Michigan State Police ("MSP") files are exempt under the Freedom of Information Act ("FOIA"). The King family does not want access to all of the OCCK files, it only wants a determination as to whether Christopher Busch participated in the murder of Timothy King.

Binkley's letter stated that he was enclosing

> my client's check for $5,762.74. You have authority to cash this check when you agree to make the entire MSP file on Christopher Busch available to my client. If you claim there are exempt portions of the file, please identify the documents which we understand to be your responsibility pursuant to FOIA. We will then take the matter up with the Oakland County Circuit Court and you may cash the check when the appeal period has expired on any order from the trial court.

On April 27, 2010, Barry King filed a complaint alleging that defendant had not identified the materials claimed to be exempt and demanded that defendant identify any purportedly exempt materials before proceeding further. On May 25, 2010, defendant filed an answer and affirmative defenses. Defendant's answer asserted, in part, that the January 6, 2010, FOIA request submitted by Giarmarco, Mullins & Horton, P.C. was not made in a representative capacity and did not identify Barry King as the FOIA requester. Defendant denied that the trial court had jurisdiction and

denied that Barry King was entitled to any relief because he had not made the FOIA request.

On June 8, 2010, Barry King requested defendant to admit that

> 1. The attached January 6, 2010 letter . . . from Giarmarco, Mullins & Horton, P.C. specifically identifies Barry L. King as its client on the accompanying Michigan State Police Request for Public Records, Michigan Freedom of Information Act Form in Item 9 [and] is a true copy.
>
> 2. The request was filed by the law firm in a representative capacity for Barry L. King as its client.

On September 1, 2010, the circuit court permitted Christopher King, who had previously made similar FOIA requests to defendant and received the same response, to be added as a plaintiff.

On December 15, 2010, plaintiffs paid the balance of the fees owed for the FOIA request, and defendant then produced what it deemed to be nonexempt records in its possession that fell within the scope of the request. In a December 22, 2010, letter, defendant stated that the FOIA request was granted in part and denied in part. Regarding the portion of the materials that were considered exempt from disclosure, the letter stated, in relevant part:

> Under section 13(1)(d) of the FOIA, MCL 15.243(1)(d), those portions of records composed of information specifically described and exempted from disclosure by statute likewise are withheld from public disclosure under the FOIA. In this particular instance, information obtained from or through, or contained in, DNA profiles; the Law Enforcement Information Network (LEIN); the Sex Motivated Crimes Report (DD-79); investigative subpoena; and polygraphs is withheld, respectively, under MCL 28.176; MCL 28.214(3); MCL 28.247; MCL 767A.8; and MCL 338.1728. In addition, documents presently known to, and protected from disclosure under the seal of, the 48th

District Court, the Hon. Kimberly F. Small, cannot be disclosed publicly without further court order directing otherwise.

On January 11, 2011, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). Defendant argued that plaintiffs brought this action prematurely because it was filed before their FOIA requests were denied and before defendant had a chance to make a final determination after having searched for and reviewed the documents and separated exempt from nonexempt information. Defendant further contended that the case was moot because defendant had provided plaintiffs with the nonexempt records in its possession and the relief requested had thus been granted. In addition, defendant asserted that plaintiffs were not entitled to attorney fees and costs because the trial court did not order disclosure of records and plaintiffs were not prevailing parties as defined in the FOIA.

On April 6, 2011, plaintiffs filed a brief opposing defendant's motion for summary disposition. Plaintiffs argued that a dispute existed regarding the appropriate processing fee. The records produced consisted of 3,411 pages of information, but according to plaintiffs, only 1/3 of the documents provided were related to Busch. Plaintiffs thus opined that they were charged approximately $11,000 for $4,000 worth of records. Further, plaintiffs contended that they were entitled to additional relief. In particular, plaintiffs had requested the affidavits underlying a warrant to search Busch's former residence. Plaintiffs also sought production of a PowerPoint presentation prepared by the investigating officers regarding Busch's involvement in the OCCKs. Plaintiffs also sought to take the discovery depositions of two of defendant's employees to determine why

plaintiffs were charged $11,000 for $4,000 worth of records. Finally, plaintiffs asserted that the trial court was required to determine the amount of attorney fees to be awarded to plaintiffs. Plaintiffs thus asked the trial court to deny defendant's motion for summary disposition and grant plaintiffs the relief they requested.

In its April 14, 2011, reply brief in support of its motion for summary disposition, defendant argued that it was entitled to reimbursement of the costs incurred in processing plaintiffs' FOIA requests and that the interconnectedness of the records required defendant to search for, retrieve, and separate records to the same extent regardless of plaintiffs' limitation of their requests to documents relating to Busch. Further, defendant asserted that it did not possess records regarding the PowerPoint presentation. This assertion was supported by an affidavit of an employee, stating: "To the best of the Department's knowledge, information, and belief, the PowerPoint slides do not exist within the Department. A PowerPoint was created by the Oakland County Prosecutor's Office but is not in the possession of the Michigan State Police." Finally, defendant asserted that, in the interest of judicial economy, plaintiffs' brief opposing defendant's motion for summary disposition should be treated as plaintiffs' appeal of defendant's decision to uphold the partial denial of plaintiffs' FOIA requests.

On April 19, 2011, the trial court dispensed with oral argument and denied defendant's motion for summary disposition. The trial court further ordered that "[i]n the interest of judicial economy and to expedite this matter, the Court will treat Plaintiffs' response to the instant motion as an appeal of Defendant's December 22, 2010

final determination to partially deny Plaintiffs' FOIA requests."

After holding a pretrial hearing, the trial court entered an order on May 13, 2011, which provided, in part, the following:

> At issue is the amount of the processing fees paid by the Plaintiffs to Defendant pursuant to MCL 15.234. Plaintiffs have paid the amount of $11,200.00. The Court recognizes that Defendant, in keeping with the spirit of the Freedom of Information Act ("FOIA["]), responded to Plaintiffs' FOIA requests with voluminous pages of material concerning the "Oakland County Child Killer." However, the FOIA requests, as modified by Plaintiffs, were confined to information concerning Christopher Busch. Therefore, [the] Court finds the amount of $5,600.00 to be reasonable. Accordingly, Defendant shall reimburse Plaintiffs the amount of $5,600.00.
>
> In regard to the request for the affidavit referenced in the 48th District Court's order of April 29, 2010, the Court finds Defendant's denial to be appropriate and upholds the same.
>
> In regard to the request for the Power Point, the Court directs Defendant to prepare and submit an appropriate affidavit stating that the same does not exist.
>
> In regard to the requested polygraph examiners reports, the Court directs Defendant to submit un-redacted copies to this Court for an in camera review within 14 days in addition to providing the Court with Defendant's legal basis for its denial of the same. Thereafter, Plaintiff shall have 14 days to file a response.
>
> The Court reserves the issue of attorney fees.

After receiving additional briefing from the parties related to the polygraph test results and after conducting the in camera review, the trial court entered an order on June 29, 2011, making the following determinations:

The Court upholds the Defendant's denial of the Report for the reason that the Report is exempted from disclosure by the Forensic Polygraph Examiners Act ("FPEA") which makes the Report's disclosure a crime. Here, Section 13(1)(d) of the FOIA provides an exemption from public disclosure for "[r]ecords or information specifically described and exempted from disclosure by statute.["] MCL 15.243(1)(d). Therefore, Defendant properly exempted the Report from disclosure. The Court concludes that Defendant was justified in denying Plaintiffs' request for the report. Plaintiffs offer no law that would call for a contrary result.

In addition, the Court finds that Defendant has submitted the appropriate affidavit establishing the nonexistence of the Power Point slides and programs requested by Plaintiffs.

A hearing was held on July 18, 2011, the date that was scheduled for trial. Plaintiffs' counsel stated that the issue before the court was whether to award attorney fees to plaintiffs. Plaintiffs' counsel stated that plaintiffs were not requesting fees under the FOIA as the prevailing parties. Rather, plaintiffs sought attorney fees relative to their requests to admit regarding the trial court's jurisdiction, which defendant had denied. Plaintiffs' counsel stated that although Barry King was a member of the law firm representing plaintiffs, Barry King had demanded that counsel memorialize the time spent on the case. Plaintiffs' counsel indicated that he was asking for $5,000, which represented 20 percent of his time on the case.

In response, defense counsel indicated that attorney fees were not warranted because there had been reasonable grounds for refusing to admit that the court had jurisdiction, given that the FOIA request was submitted by the law firm rather than by the client. Defense counsel also found it unreasonable to say that

the jurisdictional issue could have taken 20 percent of the time plaintiffs' counsel's spent on the case.

The trial court concluded that "$2,500 would be a fair and reasonable sanction to be paid by the defendant to the plaintiff[s] in this matter."

### I. PLAINTIFFS' ARGUMENTS ON APPEAL

Plaintiffs initially argued on appeal that the trial court erred by concluding that reports regarding Busch's polygraph examination and a search warrant and supporting affidavit related to a search of Busch's former residence were exempt from disclosure under the FOIA. Plaintiffs also challenged the trial court's conclusion that defendant did not possess records regarding a PowerPoint presentation made by law-enforcement officials about the OCCKs investigation. In particular, plaintiffs seek to depose defendant's FOIA coordinator regarding whether defendant possesses "backup files" concerning the PowerPoint presentation. At oral argument, plaintiffs withdrew their request for the PowerPoint presentation, and in a supplemental brief filed by plaintiffs after oral argument, plaintiffs also withdrew their claims concerning the search warrant and supporting affidavit. Thus, the only issue remaining for this Court's review involves the trial court's ruling that the polygraph report is exempt from disclosure.

"This Court . . . reviews de novo a trial court's legal determination in a FOIA case." *Hopkins v Duncan Twp*, 294 Mich App 401, 408; 812 NW2d 27 (2011). "[T]he clear error standard of review applies in FOIA cases where a party challenges the underlying facts that support the trial court's decision. In that case, the appellate court must defer to the trial court's view of the facts unless the appellate court is left with the

definite and firm conviction that a mistake has been made by the trial court." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472; 719 NW2d 19 (2006). Any discretionary determinations in FOIA cases are reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.* "This Court reviews a trial court's decision to grant or deny discovery for an abuse of discretion." *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003).

Also, questions of statutory interpretation are reviewed de novo. *Dep't of Transp v Gilling*, 289 Mich App 219, 228; 796 NW2d 476 (2010). Regarding the interpretation of statutes, our Supreme Court has explained:

> It is axiomatic that statutory language expresses legislative intent. A fundamental principle of statutory construction is that a clear and unambiguous statute leaves no room for judicial construction or interpretation. Where the statute unambiguously conveys the Legislature's intent, the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. [*Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008) (quotation marks and citations omitted).]

The purpose of the FOIA is set forth in MCL 15.231(2):

> It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act [i.e., the FOIA]. The people shall be informed so that they may fully participate in the democratic process.

"The FOIA provides that 'a person' has a right to inspect, copy, or receive public records upon providing a

written request to the FOIA coordinator of the public body." *Detroit Free Press, Inc v City of Southfield*, 269 Mich App 275, 290; 713 NW2d 28 (2005). "Under FOIA, a public body must disclose all public records that are not specifically exempt under the act." *Hopkins*, 294 Mich App at 409; see also MCL 15.233(1).

> The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies. However, by expressly codifying exemptions to the FOIA, the Legislature shielded some affairs of government from public view. The FOIA exemptions signal particular instances where the policy of offering the public full and complete information about government operations is overcome by a more significant policy interest favoring nondisclosure. In many of these instances, the Legislature has made a policy determination that full disclosure of certain public records could prove harmful to the proper functioning of the public body. [*Eastern Mich Regents*, 475 Mich at 472-473 (quotation marks and citations omitted).]

Initially, we note that in their argument on the polygraph reports issue, plaintiffs acknowledge that they failed to cite any authority. "This Court will not search for authority to sustain or reject a party's position. The failure to cite sufficient authority results in the abandonment of an issue on appeal." *Hughes v Almena Twp*, 284 Mich App 50, 71-72; 771 NW2d 453 (2009) (citation omitted). Nevertheless, we will address this issue.

MCL 15.243(1)(d) exempts from disclosure under the FOIA "[r]ecords or information specifically described and exempted from disclosure by statute." A provision of the Forensic Polygraph Examiners Act (FPEA), MCL 338.1701 *et seq.*, provides:

> (1) Any person who is or has been an employee of a licensed examiner shall not divulge to anyone other than his employer or former employer, or as the employer shall

direct, except as he may be required by law, any information acquired by him during his employment in respect to any of the work to which he shall have been assigned by the employer. Any employee violating the provisions of this section and any employee who makes a false report to his employer in respect to any work is guilty of a misdemeanor.

(2) ... Any communications, oral or written, furnished by a professional man or client to a licensed examiner, or any information secured in connection with an assignment for a client, shall be deemed privileged with the same authority and dignity as are other privileged communications recognized by the courts of this state.

(3) Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the [Department of Licensing and Regulatory Affairs] in accordance with [MCL 338.1707]. [MCL 338.1728.]

In *In re Petition of Delaware*, 91 Mich App 399, 400-403; 283 NW2d 754 (1979), the state of Delaware sought to compel the respondent, a Michigan-licensed polygraph examiner, to testify before a grand jury regarding his polygraph examination in Michigan of a Delaware murder suspect. This Court affirmed the denial of the state of Delaware's petition and, while citing the privilege contained in MCL 338.1728(2), stated the following:

We think that this is a situation which clearly falls within the letter and spirit of the polygrapher privilege statute. That statute represents a declaration by the Legislature of the policy of the State of Michigan, a policy which the courts of this state have a duty to enforce. We are of the opinion that the aforementioned policy would be ill served by permitting the Attorney General of Delaware to use the powers of a Michigan court to force an unwilling

witness to appear before a grand jury which will then use its powers to require the policy of the State of Michigan to be violated. [*Id.* at 405.]

Here, the trial court directed defendant to submit unredacted copies of the polygraph reports to the court for an in camera review. Following its in camera review, the trial court upheld defendant's denial of the request to disclose information related to the polygraph examinations.

The trial court did not err. MCL 338.1728(3) provides that

[a]ny recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the [Department of Licensing and Regulatory Affairs] in accordance with [MCL 338.1707].

It is undisputed that defendant was the recipient of information, reports, or results from a polygraph examiner. Defendant was therefore prohibited from providing, disclosing, or conveying that information, those reports, or those results to a third party except as required by law or administrative rules. Plaintiffs identify no law or rules that would require disclosure. Accordingly, because the polygraph reports are exempt from disclosure by the FPEA, they are likewise exempt under the FOIA. MCL 15.243(1)(d).

As noted earlier, plaintiffs acknowledge that they have cited no legal authority to support their argument on this issue. Plaintiffs contend that in lieu of legal authority, this Court should apply "the law of common sense" by holding that when a public body publishes polygraph information that is later contradicted by other experts, the subsequent information should be

made public. Assuming arguendo that plaintiffs' theory that "the law of common sense" should govern in this instance, plaintiffs' argument nevertheless fails because it is based on two factual premises that are unsupported in the record.

First, plaintiffs assert that in February 1977, the Oakland County Prosecutor announced the results of Busch's polygraph examination to the news media. In making this claim, plaintiffs rely on two newspaper articles from February 1977. However, neither article indicates that the Oakland County Prosecutor announced the results of Busch's polygraph examination. The February 20, 1977, *Detroit News* article did not refer to the polygraph examination. And the February 22, 1977, article from an unidentified newspaper reported on the alleged sexual exploitation of boys in Flint and an extension of that investigation into Oakland County and contained the following information:

> [Then Oakland County Prosecutor L. Brooks] Patterson emphasized that the cases are seemingly unrelated to the murder of Mark Stebbins, a 12-year-old Ferndale boy, sexually molested and then killed early last year.

> [Flint Police Officer Thomas] Waldron said Oakland County investigators have interviewed two of the men arrested in Flint, have given them lie-detector tests and have concluded the men are not suspects in the Stebbins case.

> The three Flint men, Douglas Bennett, 19, Gregory Green, 26, and Christopher Busch, 40, were arrested, arraigned and bound over for trial in the last two weeks on multiple charges of criminal sexual conduct. They are charged with using gifts, threats and physical force to persuade the boys to engage in sodomy, oral sex and lewd photography sessions.

This article does not say that Busch passed a polygraph examination; instead, it reflects a state-

ment by Waldron that two of the three suspects were given polygraph examinations and were not suspects in the Stebbins murder. To the extent that this could amount to an implicit assertion that two of the three suspects passed a polygraph examination, importantly, Busch was not identified as one of the two who passed the test. Therefore, plaintiffs' assertion that the articles established that Busch's polygraph examination results were revealed is not supported. Moreover, the information is attributed to Waldron, who appears from the newspaper article to have been "[a]n officer in the juvenile section of the Flint police department . . . ." Thus, the article does not suggest that the Oakland County Prosecutor published the result of Busch's polygraph examination to the news media. Although the article suggests that Patterson made a general statement that the sexual exploitation cases were "seemingly unrelated" to the murder of Stebbins, no indication exists that Patterson revealed that Busch had passed a polygraph examination. In any event, Patterson's and Waldron's comments would not constitute a disclosure by defendant, which is a separate legal entity from the Oakland County Prosecutor's Office and the Flint Police Department.[1]

---

[1] The record also contains a page from what appears to be a police report prepared in January 1977, stating that Busch was cleared by a polygraph examination. However, the report does not indicate what agency prepared the report. Assuming that the report was generated by defendant, there is no evidence that defendant released this report to the public before it was provided to plaintiffs in December 2010 in response to their FOIA requests in this case.

Also, although plaintiffs assert that the January 1977 polygraph examination was administered by a polygraph examiner employed by defendant, this does not establish that defendant was thereby responsible for any public release of information regarding the polygraph examination by another law enforcement agency. "Information, reports, or results

Second, plaintiffs aver that three subsequent polygraph examiners concluded that the original interpretation of the polygraph examination was erroneous. But again, the record does not support this assertion. Without identifying a source, plaintiffs merely claim that their family has been "orally advised" that three subsequent examiners found that the original interpretation of the results was incorrect and that either Busch failed the test or the results were inconclusive. There is no evidence to support this unattributed hearsay. Accordingly, plaintiffs' contention that a polygraph interpretation must be published if it challenges or contradicts an earlier published interpretation is both unsupported by legal authority and premised on factual assumptions that lack any basis in the record.

Therefore, the trial court properly upheld the denial of the requests for the polygraph reports on the basis of MCL 15.243(1)(d), exempting from disclosure under the FOIA "[r]ecords or information specifically described and exempted from disclosure by statute," and we need not consider defendant's alternative arguments for affirming.

## II. DEFENDANT'S ARGUMENTS ON CROSS-APPEAL

### A. ATTORNEY FEES AS SANCTIONS

Defendant first argues on cross-appeal that the trial court abused its discretion by ordering defendant to pay attorney fees as sanctions for refusing to admit that Barry King had standing to file this FOIA action. We agree. "A trial court's decision on a motion for sanctions based on the failure to admit is reviewed for an abuse of

from a polygraph examiner may be provided, disclosed, or conveyed between public law enforcement agencies or between licensed polygraph examiners." Mich Admin Code, R 338.9004(8).

discretion." *Midwest Bus Corp v Dep't of Treasury*, 288 Mich App 334, 349-350; 793 NW2d 246 (2010). "A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes." *Hackel v Macomb Co Comm*, 298 Mich App 311, 334; 826 NW2d 753 (2012).

"Pursuant to MCR 2.312(A), a party in a civil case may request certain admissions from the other party before trial." *Midwest Bus*, 288 Mich App at 350. MCR 2.313(C) provides:

> If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The court shall enter the order unless it finds that
>
> (1) the request was held objectionable pursuant to MCR 2.312,
>
> (2) the admission sought was of no substantial importance,
>
> (3) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or
>
> (4) there was other good reason for the failure to admit.

"The mere fact that the matter was proved at trial does not, of itself, establish that the denial in response to the request for an admission was unreasonable." *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 457; 540 NW2d 696 (1995) (quotation marks and citations omitted).

In *Midwest Bus*, 288 Mich App at 350, the plaintiff requested sanctions on the ground that the defendants had failed to admit certain facts alleged in the plaintiff's amended complaint. This Court concluded that an

award of sanctions under MCR 2.313(C) was not warranted because the parties had voluntarily settled their dispute regarding the aspect of the case that was the subject of the request for admissions before the hearing on the parties' cross-motions for summary disposition and before the case was summarily dismissed. *Id.* This Court offered the following analysis:

> In *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413; 551 NW2d 698 (1996), our Supreme Court explained that admissions under MCR 2.312 are more a matter of civil procedure because an admission conclusively establishes the admitted facts " 'and the opposing side need not introduce evidence to prove the facts.' " *Id.* at 420, quoting 2 Jones, Evidence (6th ed), § 13C:14, p 310 (November 1995 supp). "A request for admission is not a typical discovery device, however, because the purpose 'is not to discover facts but rather to establish some of the material facts in a case without the necessity of formal proof at trial . . . so that issues which are disputed might be clearly and succinctly presented to the trier of facts.' " *Id.* at 420 n 6, quoting 23 Am Jur 2d, Depositions and Discovery, § 314, p 613. The *Radtke* Court further explained that these judicial admissions are formal concessions " 'that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' " *Id.* at 420, quoting 2 McCormick, Evidence (4th ed), § 254, p 142. In this case, because the disputed issue was settled before final judicial disposition, plaintiff was not required to prove the allegation by further litigation and, therefore, was not entitled to "expenses incurred in making that proof" within the contemplation of MCR 2.313(C). Thus, the Court of Claims did not abuse its discretion when it denied plaintiff's request for sanctions under MCR 2.313(C). [*Id.* at 350-351.]

Unlike in *Midwest Bus*, the parties here did not settle the matter that comprised the subject of the requests for admissions, i.e., whether Barry King had standing because the law firm that submitted the FOIA request

did so in a representative capacity for Barry King. Nonetheless, that issue became moot when Christopher King was added to the case, as he was seeking the same records through his own FOIA request. Moreover, although defendant challenged Barry King's standing in its affirmative defenses, defendant did not file a dispositive motion raising the issue, and the trial court did not decide that issue. Plaintiffs thus did not prove the truth of the matter regarding which admissions were requested under MCR 2.312, as there was no hearing or trial in which plaintiffs were required to do so. Accordingly, the trial court's award of attorney fees under MCR 2.313(C) fell outside the range of principled outcomes.

Accordingly, because plaintiffs did not prove the truth of the matter that was the subject of the requests for admissions, the trial court abused its discretion by awarding attorney fees to plaintiffs as a discovery sanction. It is therefore unnecessary to address defendant's additional arguments that it had a reasonable ground to believe it might prevail on the matter and that neither plaintiffs nor the trial court articulated a basis for awarding fees in the amount of $2,500.

We note that plaintiffs' brief on cross-appeal asserts other grounds on which they claim to be entitled to attorney fees, including an incomprehensible assertion regarding discussions with defense counsel regarding settlement (for which plaintiffs admit the record contains no reference), a vague reference to defense counsel's discussions with the trial court's research attorney, and defendant's allegedly inadequate responses to written interrogatories that necessitated a motion for amended answers. Plaintiffs submit that they are "ready to submit evidence on the above matters and the fees exceed the amount awarded." Because none of these grounds for awarding attorney fees was raised or

decided below, they are not preserved for appellate review. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Although this Court "may review an unpreserved issue if it presents a question of law and all the facts necessary for its resolution are before the Court," *Macatawa Bank v Wipperfurth*, 294 Mich App 617, 619; 822 NW2d 237 (2011), all the facts necessary to resolve plaintiffs' new arguments for awarding sanctions are not before this Court, as plaintiffs impliedly concede when they assert that they "are ready to submit evidence on the above matters." Moreover, this issue does not present a question of law because an award of attorney fees is generally reviewed for an abuse of discretion. *Hines*, 265 Mich App at 438. There is no exercise of discretion to review with respect to plaintiffs' newly asserted grounds for awarding attorney fees. Accordingly, we decline to review plaintiffs' unpreserved arguments regarding this issue.

### B. PARTIAL REFUND OF FOIA PROCESSING COSTS

Defendant's next argument on cross-appeal is that the trial court erred by requiring defendant to refund a portion of the costs charged for processing plaintiffs' FOIA requests. We agree. A trial court's decision regarding the appropriate fee charged to process a FOIA request constitutes a finding of fact that is reviewed for clear error. See, generally, *Tallman v Cheboygan Area Sch*, 183 Mich App 123; 454 NW2d 171 (1990). A finding of fact is clearly erroneous when no evidence supports the finding or, on the entire record, this Court is left with a definite and firm conviction that a mistake has been made. *Id.* at 126.

MCL 15.234(1) provides that "[a] public body may charge a fee for a public record search, the necessary

copying of a public record for inspection, or for providing a copy of a public record." The fee must be "limited to actual mailing costs, and to the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information . . . ." *Id.* Also, "[a] public body may require at the time a request is made a good faith deposit from the person requesting the public record or series of public records, if the fee authorized under this section exceeds $50.00. The deposit shall not exceed 1/2 of the total fee." MCL 15.234(2).

> The FOIA clearly provides a method for determining the charge for records. It is incumbent on a public body, if it chooses to exercise its legislatively granted right to charge a fee for providing a copy of a public record, to comply with the legislative directive on how to charge. The statute contemplates only a reimbursement to the public body for the cost incurred in honoring a given request—nothing more, nothing less. If the statutorily computed charge is $1 per page for the request, then $1 per page may be charged. However, if the computed charge is $0.09 per page, no more can be charged, regardless of the ease of application of a "policy" or the difficulty in determining the legislatively mandated computation. [*Tallman*, 183 Mich App at 130.]

The trial court's decision in this case was clearly erroneous because it did not provide a factual basis for reducing defendant's processing fee to $5,600. Defendant is entitled to reimbursement "for the cost incurred in honoring" plaintiffs' FOIA request— "nothing more, nothing less." *Id.* Defendant's assistant FOIA coordinator set forth in detail the manner in which the processing fee was calculated. The total fee of $10,667.15 was made up of $9,267.47 for the labor costs of searching for, retrieving, examining, and reviewing records to separate exempt from non-

exempt material and $1,399.68 for photocopying 3,437 pages, including the use of redacting tape. Although plaintiffs claimed that their request was limited to information regarding Busch and that approximately 2/3 of the documents provided by defendant did not involve Busch, Barry King's amended request for public records and Christopher King's request for public records listed 32 items, 9 of which did *not* refer to Busch. Also, defendant's FOIA coordinator explained that "the individuals involved in the investigation are so closely intertwined that the documents could not be separated. A request for 'all documents related to' Busch or [another suspect for which information had originally been requested] required the production of all the files [plaintiffs] received."

Moreover, even assuming that the FOIA requests were limited to Busch and that defendant could have reduced its photocopying charges by providing fewer pages to plaintiffs, this would not have reduced the total processing costs to $5,600, the amount awarded by the trial court. The charges for photocopying came to only $1,399.68 of the total fee. The remaining amount, $9.267.47, was for retrieving and reviewing the records and separating exempt from nonexempt material. Neither plaintiffs nor the trial court have identified a factual basis in the record to challenge defendant's calculation of this amount or offered a reason to conclude that retrieving, examining, and separating these documents was not necessary to honor plaintiffs' request.

Accordingly, we conclude that the trial court clearly erred by finding that defendant's total processing costs were limited to $5,600. We vacate the trial court's determination of the processing fee and remand the

case to the trial court to calculate the fee on the basis of facts contained in the record.

### C. SUMMARY DISPOSITION—MCR 2.116(C)(8)

Defendant next argues on cross-appeal that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(8) because plaintiffs filed their FOIA claims prematurely, before defendant denied their FOIA requests. We disagree.

> A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone and the ruling is reviewed de novo. "The motion must be granted if no factual development could justify the plaintiff's claim for relief." When deciding a motion under MCR 2.116(C)(8), the court must accept as true all factual allegations contained in the complaint. [*Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013) (citations omitted).]

Questions regarding ripeness are also reviewed de novo. *Huntington Woods v Detroit*, 279 Mich App 603, 614; 761 NW2d 127 (2008).

"The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained." *Id*. at 615 (quotation marks and citation omitted). A claim that rests on contingent future events is not ripe. *Id*. at 615-616. "Hence, when considering the issue of ripeness, the timing of the action is the primary focus of concern." *Id*. at 616.

Under the FOIA, a public body must respond to a request for a public record within five business days. MCL 15.235(2). The public body's response must grant, deny, or grant in part and deny in part the request; the public body may also extend the response period for up to 10 business days. MCL 15.235(2)(a) through (d). A public body's failure to timely respond to a request under the FOIA

constitutes a final determination to deny the request. MCL 15.235(3); *Scharret v City of Berkley*, 249 Mich App 405, 411-412; 642 NW2d 685 (2002).

MCL 15.235(7) provides:

> If a public body makes a final determination to deny in whole or in part a request to inspect or receive a copy of a public record or portion of that public record, the requesting person may do either of the following:

> (a) Appeal the denial to the head of the public body pursuant to [MCL 15.240].

> (b) Commence an action in circuit court, pursuant to [MCL 15.240].

MCL 15.240(1), in turn, provides:

> If a public body makes a final determination to deny all or a portion of a request, the requesting person may do 1 of the following at his or her option:

> (a) Submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason or reasons for reversal of the denial.

> (b) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

Defendant contends that it *granted* plaintiffs' FOIA requests and that this lawsuit was thus filed prematurely because a circuit court action may not be filed on the basis of a public body's grant of a FOIA request. We disagree with defendant's premise that it granted the FOIA requests in their entirety. A party's choice of labels is not binding on this Court. See, generally, *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). In responding to Barry King's January 6, 2010, FOIA request, defendant's response letter stated: "Your request is granted *as to*

existing, *non-exempt* records in the possession of the Michigan State Police that fall within the scope of the request." (Emphasis added.) The letter also requested a deposit based in part on estimated labor costs for "separating exempt and nonexempt material." The letter further indicated that upon receipt of the requested deposit, defendant would process the request and notify Barry King of the statutory basis for the exemption of any records or portions of records. Defendant included similar language in its letter responding to Christopher King's FOIA request. Thus, although defendant contends that it granted the requests, its response letters reflect that the requests were effectively granted in part and denied in part, as the letters contemplated the separation of exempt material and thereby implicitly denied the requests with respect to such material.

It could be argued that defendant's responses did not expressly deny any portion of the requests but merely asserted the possibility that an exemption would later be asserted. In that event, however, defendant must be deemed to have failed to timely respond to the FOIA requests in their entirety by granting, denying, or granting in part and denying in part the requests. In other words, defendant granted the requests in part but failed to respond with respect to all the requested documents because the response suggested some material might be withheld as exempt but failed to state conclusively whether the response was granted or denied with respect to those potentially exempt items. A public body's failure to timely respond to a request as required by the FOIA constitutes a final determination to deny the request. MCL 15.235(3); *Scharret*, 249 Mich App at 411-412.

In either event, then, defendant's responses are deemed to reflect a partial denial of the FOIA requests. Therefore, plaintiffs' FOIA claims did not rest on contingent future events. *Huntington Woods*, 279 Mich App at 615-616. Rather, the claims were filed after defendant had effectively denied the FOIA requests with respect to potentially exempt materials. Thus, plaintiffs did not file this action prematurely.

Moreover, it should be noted that after this action was filed, defendant *expressly* indicated that it was denying a portion of plaintiffs' FOIA requests. In its December 22, 2010, letter granting in part and denying in part plaintiffs' requests, defendant asserted various exemptions and declined to produce certain documents. Following plaintiffs' internal appeal to defendant's department head, defendant upheld the partial denial of plaintiffs' FOIA requests. Defendant then urged the trial court, in the interest of judicial economy, to treat plaintiffs' brief opposing defendant's motion for summary disposition as plaintiffs' appeal of defendant's decision to uphold the partial denial of plaintiffs' FOIA requests. The trial court followed defendant's suggestion and ruled, "In the interest of judicial economy and to expedite this matter, the Court will treat Plaintiffs' response to the instant motion as an appeal of Defendant's December 22, 2010 final determination to partially deny Plaintiffs' FOIA requests." Therefore, even if this action had originally been filed prematurely, that fact would have become irrelevant after defendant expressly denied in part plaintiffs' FOIA requests and the trial court, at defendant's urging, treated plaintiffs' response to the motion for summary disposition as an "appeal" from the partial denial of the FOIA requests. A party cannot argue on appeal that an action to which it stipulated was erroneous. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523,

529; 695 NW2d 508 (2004). Thus, defendant may not challenge the trial court's decision to review this matter as an appeal of defendant's December 22, 2010, partial denial of plaintiffs' FOIA requests.

Further, this Court generally does not address moot questions or declare legal principles that have no practical effect in a case. *Morales v Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003). "An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (citation omitted). Whether this action was originally filed prematurely is moot because the trial court ultimately followed defendant's suggestion to treat plaintiffs' response to the motion for summary disposition as an appeal of the December 22, 2010, partial denial of the FOIA requests. Given this procedural development, it makes no practical difference whether the action was originally filed prematurely. The only possible exception to this conclusion pertains to the challenge to discovery sanctions discussed earlier, as those sanctions were imposed for defendant's refusal to admit certain facts *before* plaintiffs filed their "appeal" of the December 22, 2010, partial denial of the FOIA requests. As discussed, however, the sanctions award is reversed for other reasons. It is thus unnecessary to rely on the allegedly premature filing of this case to dispose of the discovery-sanctions issue.

Next, we note that, in responding to defendant's argument on this issue, plaintiffs argue that defendant failed to provide a list of exempt and nonexempt documents. Because this argument was not raised below, it is

not preserved for appellate review. *Hines*, 265 Mich App at 443. Moreover, although this Court may review an unpreserved issue if it presents a question of law for which the necessary facts have been presented, *Macatawa Bank*, 294 Mich App at 619, this issue does not present merely a question of law. A review of plaintiffs' argument would require determining whether defendant failed to provide the required list, which would be at least in part a factual question to be reviewed for clear error. See, generally, *Eastern Mich Regents*, 475 Mich at 472 (the clear-error standard applies in FOIA cases when a party challenges the underlying facts). Because this issue was not raised below, the trial court made no finding of fact that this Court could review for clear error. Even if the issue were preserved, plaintiffs fail to cite any authority in support of their argument, which is thus deemed abandoned. *Hughes*, 284 Mich App at 71-72. We thus decline to review this argument.

### D. SUMMARY DISPOSITION—MCR 2.116(C)(10)

Defendant's final argument on cross-appeal is that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(10) because plaintiffs' claims were rendered moot after defendant produced some of its records. We disagree. "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the

moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

As previously discussed, this Court generally does not address moot questions or declare legal principles that have no practical effect in a case. *Morales*, 260 Mich App at 32. "When the disclosure that a [FOIA] suit seeks has already been made, the substance of the controversy disappears and becomes moot." *Herald Co, Inc v Ann Arbor Pub Sch*, 224 Mich App 266, 270-271; 568 NW2d 411 (1997); see also *Densmore v Dep't of Corrections*, 203 Mich App 363, 366; 512 NW2d 72 (1994) ("Once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.") (internal quotation marks and citation omitted); *Traverse City Record Eagle v Traverse City Area Pub Sch*, 184 Mich App 609, 610; 459 NW2d 28 (1990) (noting that the plaintiff, which sought access to a tentative collective-bargaining agreement, "was given a copy of the agreement at issue after it was ratified by the contracting parties, rendering the issue in this case moot").

Defendant contends that plaintiffs' claims became moot after defendant produced its nonexempt documents in December 2010. However, defendant did not produce all of its records. As discussed earlier, plaintiffs contested defendant's asserted exemptions for certain withheld documents, including the search warrant, the warrant's supporting affidavit, and the polygraph examination reports. In addition, plaintiffs sought to depose defendant's FOIA coordinator regarding possible backup files related to the PowerPoint presentation. Plaintiffs also sought attorney fees and a partial refund of the processing fee. Therefore, defendant's disclosure of some documents did not make it impos-

sible for the trial court to grant relief to plaintiffs. Defendant has thus failed to establish that plaintiffs' claims were moot.

Affirmed in part, vacated in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. A public question being involved, no costs may be taxed. MCR 7.219(A).

MURRAY, P.J., and OWENS, J., concurred with WILDER, J.