# STATE OF MICHIGAN

# COURT OF APPEALS

MARY LOU BONACCI and DAVID GILL,

        Plaintiffs,

and

CUMMINGS, McCLOREY, DAVIS & ACHO,
P.L.C.,

        Appellant,

v

FERRIS STATE UNIVERSITY and FERRIS
STATE UNIVERSITY BOARD OF TRUSTEES,

        Defendants-Appellees.

UNPUBLISHED
January 13, 2015

Nos. 318136 & 319101
Mecosta Circuit Court
LC No.  11-20376-CD

Before:  RIORDAN, P.J., and MARKEY and WILDER, JJ.

PER CURIAM.

Appellant, Cummings, McClorey, Davis & Acho, P.L.C. ("CMDA"), appeal as of right a trial court's orders awarding attorney fees and costs incurred by defendants, Ferris State University ("FSU") and Ferris State University Board of Trustees ("Board"), when defending a case filed by CMDA on behalf of its clients, plaintiffs Mary Lou Bonacci and David Gill.[1]  We affirm, in part, and reverse, in part.

## I

In 2003, FSU hired Bonacci, who was in her mid-50s, as a tenure-track professor in the Social Work Department.  When she was 59 or 60 years old, she received tenure.  Bonacci taught courses at FSU's satellite campus in Traverse City, where she served as the department's Site Coordinator.  During the same period of time, she also taught courses and maintained an office at

---

[1] Plaintiffs are married.

-1-

FSU's main campus in Big Rapids. In 2008, FSU received complaints regarding Bonacci's performance and conduct at the Traverse City campus, and FSU conveyed the concerns to her.

In April 2009, the faculty of the Social Work Department, including Bonacci, agreed to a rotation of teaching assignments, by which faculty in the department would rotate between the main campus and the satellite campus.[2] Bonacci was then assigned to teach courses solely on the Big Rapids campus for the 2009 summer and fall semesters, and the duties previously assigned to her at the Traverse City campus were distributed among other faculty, both older and younger than her.

In September 2009, Bonacci filed grievances with FSU regarding her requests for travel reimbursements from her home to the Big Rapids campus for her summer and fall 2009 teaching assignments, which had been denied.

On November 5, 2009, physician assistant Michael L. Fulker recommended that "different accommodations be done to facilitate Mrs. Bonacci['s] ability to perform her job requirements." Fulker tied Bonacci's work-related driving (at least 600 miles per week) to her rheumatoid arthritis and degenerative bone disease. FSU responded that, if Bonacci had intended to request accommodations under the Americans with Disabilities Act, her request was inadequate and provided her with the information required to make such a request.

Bonacci then submitted a new letter from Fulker, which was nevertheless still dated November 5, 2009, and recommended that Bonacci drive 200 miles per week or less and that she only work four days per week for up to six hours. Fulker also stated, "In addition she was recently found to [be] legally blind in regards to driving at night and has this restriction pending." A letter, which is not dated, from Dr. Bassima Al-Delaigan, recommended that Bonacci should not be driving at night because her "vision is considered to be illegal to drive."

Also in November 2009, Bonacci was hospitalized, suffering from IBS, pancreatic failure, steatorrhea, and anemia. To obtain medical leave pursuant to the Family and Medical Leave Act ("FMLA"), Bonacci submitted a certification from Fulker regarding "a serious health condition," which would cause her to be "incapacitated."

In December 2009, while Bonacci was on FMLA leave for her pancreatic failure, steatorrhea, and anemia, FSU Provost Fritz Erickson advised plaintiffs, "the key for me in working on this is to get the specific medical documentation regarding [Bonacci's] current health condition and, if [Bonacci is] not deemed totally disabled, what type of job accommodations(s) . . . physicians recommend." Plaintiffs subsequently submitted the same documents relating to

---

[2] The Social Work faculty sent a letter to Dr. Matthew Klein (Dean of the College of Arts and Sciences) supporting a revision of academic teaching assignments for the Big Rapids and Traverse City campuses. The goals were to give each campus a more "diverse philosophical orientation and skill set" and to achieve an accreditation requirement for "comparability of programs." In an email sent on the same day, including the subject line "Statement for Dr. Klein," Bonacci stated, in relevant part, "Agreed, looks good."

Bonacci's arthritis, degenerative bone disease, and night blindness, which predated her hospitalization for the separate illnesses of IBS, pancreatic failure, steatorrhea, and anemia.

In early 2010, when Bonacci's FMLA leave expired, Bonacci applied for Long Term Disability and Social Security benefits, submitting documents indicating that she was "totally disabled" and "unable to work." Although FSU repeatedly requested further documentation regarding accommodations, particularly for the separate illnesses of IBS, pancreatic failure, steatorrhea, and anemia, as well as Bonacci's ability to return to work, she never provided it. FSU denied Bonacci's request for accommodations on January 11, 2010.

According to Bonacci, on November 4, 2010, Bonacci sent FSU a request for a copy of her personnel file. There is no record that FSU responded to her request. On November 11, 2010, Bonacci was terminated after losing her seniority because of her absence for medical leave—a provision of her union contract.

On January 26, 2011, plaintiffs filed a complaint in Grand Traverse County Circuit Court alleging: (I) failure to accommodate, (II) age discrimination, (III) retaliation, (IV) a violation of the Bullard-Plawecki Employee Right to Know Act, (V) breach of implied contract, and (VI) loss of consortium. Defendants filed an answer, a motion for a change of venue, and a letter arguing that the claim was frivolous and requesting clarification for the factual and legal basis for the complaint. Plaintiffs agreed at the motion hearing that Count V, breach of implied contract, should have been filed in the Court of Claims. In addition, the Grand Traverse County Circuit Court transferred the remainder of the case to Mecosta County Circuit Court. Plaintiffs filed a separate complaint for breach of implied contract in the Court of Claims, but that claim was later joined with the case in Mecosta County.

At her July 2011 deposition, Bonacci testified that she never provided a "return to work slip" because she was never able to return to work. She also testified, "Realistically looking back on it, I couldn't have taught." Afterward, CMDA filed a motion to withdraw as counsel and to voluntarily dismiss the claims with prejudice. Defendants opposed the motion and moved for entry of judgment in defendants' favor. The trial court granted CMDA's motion to withdraw, denied its motion to voluntarily dismiss, and entered a judgment for defendants.

On May 21, 2012, the trial court found CMDA jointly and severally liable with plaintiffs for defendants' attorney fees and costs, holding that plaintiffs had no reasonable basis to believe that their claims were supported by the facts and, therefore, the claims were frivolous pursuant to MCL 600.2591. Moreover, the trial court held that CMDA failed to make a reasonable inquiry to determine that the action was well-grounded in fact and law prior to signing and filing the complaints in violation of MCR 2.114.

Before the trial court held a hearing to determine the amount of attorney fees and costs incurred, plaintiffs settled with defendants and CMDA filed a motion to disqualify Mecosta County Circuit Court Judge Ronald C. Nichols. The judge ruled that CMDA, as a law firm and not a party to the case, lacked standing to move for disqualification, the motion was untimely, and CMDA had not presented grounds for disqualification. Rather, the judge found that the bulk of allegations of impropriety were grounded in misrepresentations made by CMDA. The judge denied CMDA's requests for disqualification and to set aside all previous rulings in the case.

CMDA filed an application for leave to appeal the trial court's order denying the motion for disqualification, which defendants answered, and this Court subsequently denied. *Bonacci v Ferris State University*, unpublished order of the Court of Appeals, entered January 8, 2014 (Docket No. 315781).

The trial court subsequently held an evidentiary hearing on attorney fees and costs. Following the hearing, it found defendants' attorney, Sheila Kinney, submitted detailed bills at a reasonable hourly rate of $245. It further found, "credible testimony that she worked the hours billed, that she did not 'pad the bill,' that she worked additional unbilled hours, and that she was assisted by a secretary and also by a paralegal whose time was not billed." The trial court further found the approach taken by CMDA's expert on attorney fees "unhelpful." The trial court entered two orders regarding attorney fees and costs. The June 4, 2013 order awarded attorney fees ($275,747.50) and costs ($10,967.21), which were established on the record up to the date of the evidentiary hearing—including reimbursement for 41.05 hours involved with the application for leave to appeal regarding disqualification. CMDA filed a claim of appeal from this order in Docket No. 318136. The October 29, 2013 order awarded attorney fees ($17,468.50) and costs ($17,468.50) for the defense of the case after the evidentiary hearing. CMDA filed a claim of appeal from this order in Docket No. 319101.

II

On appeal, CMDA first argues that the trial court improperly assessed attorney fees and costs against CMDA under MCR 2.114 and MCL 600.2591. We disagree.

> This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. A trial court's findings of fact, such as whether a party's position was frivolous, may not be set aside unless they are clearly erroneous. [*Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010).]

"Findings are clearly erroneous when, although there is evidence to support them, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 425; 834 NW2d 878 (2013).

MCR 2.114(E) requires sanctions if an attorney or party signs a document in violation of MCR 2.114(D), which provides:

> The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Similarly, MCL 600.2591(1) provides:

Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

The statute defines "frivolous" to include that a party "had no reasonable basis to believe that the facts underlying that party's legal position were in fact true." MCL 600.2591(3)(a)(ii). "Sanctions may be assessed without regard to whether the pleader harbored an improper purpose." *Harrison v Munson Healthcare, Inc,* 304 Mich App 1, 41; 851 NW2d 549 (2014). "The purpose for punishing with sanctions the introduction of frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *Id.* (citations and quotation marks omitted.) The purpose is not to discipline parties and attorneys "whose cases are complex or face an 'uphill fight.' " *Louya v William Beaumont Hosp*, 190 Mich App 151, 164; 475 NW2d 434 (1991).

## A. FAILURE TO ACCOMMODATE

Plaintiffs alleged in the complaint that, in November 2009, Bonacci's doctor placed physical restrictions on her and, afterwards, she requested accommodations under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, from defendants—specifically reassignment to the Traverse City campus due to her rheumatoid arthritis, degenerative osteoarthritis, and spondylosis of the spine. Plaintiffs alleged that defendants first denied her request for accommodations on January 11, 2010.

The PWDCRA provides that a person, such as defendants, shall accommodate a person with a disability for purposes of employment unless the accommodation would impose an undue hardship. MCL 37.1102(2); MCL 37.1201(b). The trial court found that, despite Bonacci's November 2009 request for accommodations due to her rheumatoid arthritis, degenerative osteoarthritis, and spondylosis of the spine, she stopped working during the same period of time for separate disabilities (steatorrhea, anemia, and pancreatic failure) and, as a result of those separate disabilities, she made requests for FMLA leave, long-term disability, and social security benefits claiming she was "totally disabled" and "unable to work." The trial court noted that Bonacci's requests for benefits due to her inability to work were substantiated with documentation from a health care provider. The trial court also found that Bonacci ignored defendants' requests for documentation that she was able to work with these separate disabilities and explaining what type of accommodations were recommended by her health care provider. Bonacci testified at her deposition that she never provided a "return to work slip" because she was never able to return to work. She also testified, "Realistically looking back on it, I couldn't have taught." The trial court found that all of the documentary evidence, as well as Bonacci's later deposition testimony, indicated that she was unable to work and there was no reasonable

basis to believe defendants failed to accommodate her. The trial court found that plaintiffs had no reasonable basis to believe that the facts underlying their legal position were true and their claim was frivolous under MCL 600.2591. The trial court further ruled, "[a]t best, this Complaint was filed in reliance on Plaintiffs' misrepresentations alone," and concluded that CMDA was subject to sanctions for failing to conduct a reasonable inquiry into plaintiffs' misrepresentations before signing the complaint under MCR 2.114(D)(2).

On appeal, CMDA relies on authority, including *Tranker v Figgie Internat'l, Inc*, 231 Mich App 115, 121-122; 585 NW2d 337 (1998), to argue the fact that Bonacci received social security disability benefits did not preclude her from seeking accommodations from defendants to perform her work. But CMDA's reliance on this line of authority is misplaced. The trial court did not conclude that the receipt of social security benefits precluded plaintiffs' failure to accommodate claim. Rather, the trial court merely considered Bonacci's receipt of social security benefits to be one of many facts CMDA would have uncovered proving Bonacci was unable to work, even with accommodations, if it had conducted a reasonable inquiry before signing the complaint. Therefore, we are not left with a definite and firm conviction that a mistake was made when the trial court concluded that CMDA failed to conduct a reasonable inquiry into the factual basis of the failure to accommodate claim. Moreover, in light of Bonacci's complete failure to notify defendants regarding accommodations that would have allowed her to return to work and her personal belief that she was actually unable to return to work, the trial court did not clearly err when it concluded that the failure to accommodate claim was frivolous. Accordingly, the trial court's imposition of attorney fees and costs pursuant to MCR 2.114 and MCL 600.2591 for the failure to accommodate claim did not qualify as an abuse of discretion.

Also on appeal, CMDA argues that the failure to accommodate claim arose, not after Bonacci was placed on restrictions in November 2009, as alleged in the complaint, but during the fall semester before she was placed on restrictions. CMDA maintains that claim was not frivolous, but because it was not alleged in the complaint and was not considered by the trial court in awarding sanctions and costs, we need not consider its merit. See *King v Mich State Police Dept*, 303 Mich App 162, 184-185; 841 NW2d 914 (2013).

## B. AGE DISCRIMINATION

Plaintiffs alleged that Bonacci's age was a factor in defendants' decision to reassign her to the Big Rapids campus and in assigning a non-tenured professor, more than 20 years younger than Bonacci, to take over her courses at the Traverse City campus. Plaintiffs further alleged that Bonacci suffered damages under the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

> To establish a prima facie case of age discrimination, plaintiff must prove, by a preponderance of the evidence, that (1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person. [*Lytle v Malady*, 458 Mich 153, 177; 579 NW2d 906 (1998).]

-6-

On appeal, CMDA maintains the thrust of its claim was favoritism to one, younger professor who received Bonacci's course assignments and further discovery was necessary after the complaint was filed to determine defendants' motivations in giving those assignments. But the trial court found that a reasonable inquiry by CMDA into its age discrimination claim would have revealed that Bonacci's course assignments were given to both younger and older faculty members. As a result, the trial court found plaintiffs could not have had a reasonable basis to believe that the facts underlying their legal position were true. In fact, Bonacci testified at her deposition that no one had a problem with her age or would have taken adverse action because of it. CMDA has not demonstrated these findings were clearly erroneous. Accordingly, the trial court's imposition of attorney fees and costs pursuant to MCR 2.114 and MCL 600.2591 for the age discrimination claim did not qualify as an abuse of discretion.

## C. BULLARD-PLAWECKI

Plaintiffs alleged that defendants failed to provide Bonacci a copy of her personnel file pursuant to the Bullard-Plawecki Employee Right to Know Act, MCL 423.501, *et seq.*, which provides, in pertinent part:

> An employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at reasonable intervals . . . the employee's personnel record if the employer has a personnel record for that employee. The review shall take place at a location reasonably near the employee's place of employment and during normal office hours. [MCL 423.503.]

The act also permits an employee to obtain a copy of their personnel file following a review, conducted in accordance with MCL 423.503, or to obtain a copy of the file "[i]f an employee demonstrates that he or she is unable to review his or her personnel record at the employing unit, then the employer, upon that employee's written request, shall mail a copy of the requested record to the employee."

In her November 4, 2010 letter to defendants, Bonacci merely requested a copy of her personnel file. The trial court found that Bonacci neither requested an opportunity to review the file under MCL 423.503 nor demonstrated that she was unable to review her record at the employing unit under MCL 423.504. The trial court concluded that CMDA failed to conduct a reasonable inquiry that its Bullard-Plawecki claim was well-grounded in fact before signing the complaint where a review or inquiry about the November 4, 2010 letter, which CMDA claims it drafted, would have revealed defendants were under no obligation to produce the file and the Bullard-Plawecki claim was frivolous. CMDA does not make any argument that these findings were clearly erroneous on appeal. Accordingly, the trial court's imposition of attorney fees and

costs pursuant to MCR 2.114 and MCL 600.2591 for the Bullard-Plawecki claim did not qualify as an abuse of discretion.[3]

## D. RETALIATION

In Count III, plaintiffs alleged that defendants retaliated against Bonacci for the grievance she had made regarding travel pay, for seeking accommodations under the PWDCRA, and for requesting a copy of her personnel file under Bullard-Plawecki. On appeal, plaintiffs' only claim is that the trial court clearly erred by finding that their claims under PWDCRA and Bullard Plawecki were frivolous, and that necessarily, the trial court must also have clearly erred by finding that their retaliation claim was frivolous. We concluded earlier in this opinion that plaintiffs failed to establish the trial court's findings regarding the PWDCRA and Bullard Plawecki claims were clearly erroneous. Therefore, plaintiffs have also not established clear error regarding the finding that the retaliation claim was frivolous and the trial court's imposition of attorney fees and costs pursuant to MCR 2.114 and MCL 600.2591 for the retaliation claim did not qualify as an abuse of discretion.

## E. BREACH OF IMPLIED CONTRACT

Plaintiffs alleged that defendants breached an implied contract that Bonacci's employment and teaching assignments would be based at the Traverse City campus. In answer to that claim, defendants offered evidence that Bonacci had not only taught and served as site coordinator at the Traverse City campus since she was hired in 2003, but she had also taught classes at the Big Rapids campus since 2003, maintained an office in Big Rapids, and had agreed to a teaching rotation among the Social Work faculty between the Big Rapids and Traverse City campuses. Count V was then dismissed because the Court of Claims had exclusive jurisdiction over such a breach of contract claim. See *Paquin v Northern Mich Univ,* 79 Mich App 605, 610; 262 NW2d 672 (1997). The trial court found that CMDA then refiled the claim in the Court of Claims, despite having learned that Bonacci had taught at both campuses and had agreed to the teaching rotation between campuses. The trial court found that CMDA failed to conduct a reasonable inquiry that its breach of implied contract claim in the circuit court was warranted by existing law or well-grounded in fact before signing the complaint.

On appeal, CMDA cites caselaw that "[a] past practice which does not derive from the parties' collective bargaining agreement may become a term or condition of employment which is binding on the parties," *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Mich Transp Auth*, 437 Mich 441, 454; 473 NW2d 249 (1991), and argues the parties' collective bargaining agreement did not expressly address faculty campus assignments. But even if that is true, CMDA fails to demonstrate that the trial court's findings that CMDA did not conduct a reasonable inquiry and the claim was frivolous were clearly erroneous, particularly because it was filed in the circuit court (a court that CMDA concedes lacked jurisdiction) and Bonacci had

---

[3] In light of this conclusion, we decline to address the trial court's alternative basis for awarding sanctions that CMDA failed to investigate whether defendants actually received the November 4, 2010 letter.

agreed to teach at the Big Rapids campus. The trial court's imposition of attorney fees and costs pursuant to MCR 2.114 and MCL 600.2591 for the breach of implied contract claim did not qualify as an abuse of discretion.

## F. LOSS OF CONSORTIUM

Plaintiffs alleged that defendants' intentional discrimination and violation of Bonacci's civil and statutory rights proximately caused Gill to suffer loss of consortium. The trial court found that plaintiffs had no reasonable basis to believe the claims in their complaint were supported by the facts and CMDA failed to make a reasonable inquiry into the facts before filing plaintiffs' complaint. On appeal, CMDA merely argues that that the trial court "had no basis to find Gill's consortium claim to be frivolous or unfounded."

"An appellant may not . . . give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003); see also *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton*, 256 Mich App at 339-340. Because CMDA merely announces its position that the trial court had no basis to find the loss of consortium claim frivolous and leaves this Court to unravel and elaborate its arguments, CMDA's appeal regarding the loss of consortium is abandoned. *Id*.[4]

## G. JOINT AND SEVERAL LIABILITY

CMDA argues that, even if the trial court properly ordered CMDA to pay attorney fees and costs, the trial court abused its discretion by holding CMDA jointly and severally liable with plaintiffs. Rather, CMDA maintains that it was led astray by Bonacci's representations about the case and to hold it jointly and severally liable would dissuade attorneys from taking difficult cases. We disagree. "The imposition of joint and several liability for attorney fees and costs is permissible under Michigan law." *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 172; 712 NW2d 731 (2005). Here, the trial court found that "the documentary evidence presented . . . undermines any reasonable basis for Plaintiffs believing the facts underlying their legal position . . . ." But the trial court also found that CMDA filed suit based on plaintiffs'

---

[4] On appeal, CMDA also argues that the award of attorney fees and costs were not appropriate on the basis of: 1) its choice of venue (Grand Traverse County Circuit Court as opposed to Mecosta County Circuit Court), and 2) its filing of the complaint for the purposes of harassment and delay. But it does not appear from the record that the trial court based its assessment against CMDA on these grounds. CMDA's arguments are therefore unpreserved and we decline to address them. See *King*, 303 Mich App at 184-185 (where there was no exercise of discretion to review with respect to newly asserted grounds for awarding attorney fees, this Court declined to address the plaintiff's unpreserved arguments on appeal).

representations, alone, and without conducting a reasonable inquiry that would have revealed a wealth of documentary evidence undermining those representations. Because actions by both CMDA and plaintiffs caused defendants to incur attorney fees and costs, it was not outside the range of principled outcomes to hold them jointly and severally liable.

III

Next, on appeal, CMDA challenges the amount of attorney fees and costs awarded by the trial court.

> The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent. [MRPC 1.5(a).]

In *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), our Supreme Court established six additional factors for consideration: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." In *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008), the Supreme Court held that "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services" and then multiply the "reasonable number of hours expended in the case" to produce a starting point for the fee award. Then, the court should consider the other factors from MRPC 1.5(a) and *Wood* to "determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors." *Id*. at 531.

When it decided the fee customarily charged in the locality for similar legal services, the trial court considered the mean and median rates for attorneys in Michigan with similar years of experience, for attorneys practicing employment defense, and for attorneys in Kent County (the

nearest county where an employment defense attorney can be hired). These median rates ranged from $233 to $250 an hour, and the mean rates ranged from $251 to $260 an hour. The trial court also noted that defendants had paid $405 an hour for a sophisticated defense attorney, but Kinney and defendants had negotiated for a rate of $245 an hour. The trial court concluded that the evidence supported a fee of at least $245 an hour. Again, multiplying this fee by the number of hours billed, the trial court awarded $293,216 in attorney fees.

CMDA argues that the trial court improperly included the fees and costs associated with its application for leave to appeal of the trial court's order denying the motion to disqualify the judge. We agree.

In *DeWald v Isola* (*After Remand*), 188 Mich App 697; 470 NW2d 505 (1991), the defendants originally appealed to this Court when the trial court denied their motion for sanctions against the plaintiff for filing a frivolous lawsuit. *Id*. at 698. This Court initially remanded to the trial court for the imposition of sanctions. On remand in the trial court, however, the defendants also sought the imposition of those costs and attorney fees incurred during their appeal to this Court, which trial court denied. *Id*. This Court held "The costs, including reasonable attorney fees, incurred by [the] defendants at the trial level were the direct result of [the]plaintiff's pursuit of a frivolous cause of action and were clearly within the scope of the sanctions allowable under MCR 2.114, 2.625(A)(2), and MCL § 600.2591[.]" *Id*. at 703. But this Court affirmed the trial court's denial of appellate costs and attorney fees, reasoning that the appeal regarding sanctions was separate from the substance of the lawsuit and the mere fact that the appeal would not have occurred but for the initial filing of the frivolous lawsuit was too tenuous a connection to impose appellate attorney fees and costs under the statutes and court rules. *Id*. at 701. This Court then held, "it is inappropriate to expand the scope of MCR 2.114, 2.625(A)(2), and MCL 600.2591 . . . to cover costs, including attorney fees, incurred on appeal and remand of a frivolous action." *Id*. at 703; see also *Edge v Edge*, 299 Mich App 121, 133; 829 NW2d 276 (2012) ("Under *DeWald*, the circuit court in the present case did not have the authority to grant plaintiff appellate attorney fees and costs under MCR 2.114, MCR 2.625(A)(2), and MCL 600.2591."). In *Edge*, this Court further explained that, even if the trial court found an appeal frivolous, it was precluded from awarding appellate attorney fees and costs. *Id.* at 134.

Although the trial court attempted to distinguish the facts of this case from *DeWald*, by concluding that the appeal of the order denying the motion to disqualify the judge "frustrated the resolution of this case" because the trial court had not yet entered a final judgment, we conclude that, just as in *DeWald*, the appeal regarding disqualification was separate from substance of the frivolous lawsuit. According to *DeWald* and *Edge*, the trial court lacked the authority to grant appellate attorney fees and costs under MCR 2.114, MCR 2.625(A)(2), and MCL 600.2591, and therefore the portion of its award including appellate attorney fees and costs amounted to an abuse of discretion.

We conclude that the portion of the trial court's award including appellate attorney fees and costs requires reversal, but we consider CMDA's additional claims on appeal that the award for attorney fees and costs incurred in the trial court proceedings should have been reduced.

First, CMDA argues that Kinney's use of block billing made it impossible to determine the amount of time each task required and whether that time was reasonable, but the trial court found that Kinney's billing entries were not "impermissibly vague." It reasoned that each paragraph entry corresponded to a day's tasks, which were discretely identified and often provided a bracketed time entry. The bracketed time entries for each day's tasks could also be compared to the total number of hours billed for that day. Citing Kinney's testimony that she does not bill for clerical work, the trial court rejected CMDA's claim that, without a bracketed time entry for each task, Kinney could have been billing for non-legal, clerical work. The trial court found that the detailed billing records submitted by Kinney adequately documented the hours and nature of her work. The trial court found credible Kinney's testimony that she actually worked those hours and did not "pad the bill." This Court is not left with a definite and firm conviction that a mistake was made regarding the trial court's findings about Kinney's block billing and the trial court did not abuse its discretion by declining to reduce the award on this ground.

Second, CMDA cites its expert's testimony that Kinney's rate was higher than the hourly rate of a large, established firm and the expert's opinion that Kinney's fees should be reduced by more than half. But the trial court rejected the expert's testimony on several grounds. The trial court found that Kinney performed all the work she billed, so it found the expert's "blended rate," using an average of the rates for a paralegal, an associate, and a senior attorney, was "unhelpful." The trial court also rejected the expert's across-the-board 25 percent reduction in the hours worked by Kinney. The trial court found that the expert failed to provide any explanation for the reduction. It also found the expert unfamiliar with the complexity of this case because he had only reviewed it for four hours. CMDA does not argue on appeal, and we do not find, that the trial court's factual findings regarding the expert's testimony were clearly erroneous and the trial court did not abuse its discretion by declining to reduce the award based on this testimony.

Third, citing MRPC 1.5(a)(7) and *Wood* factor 1, the trial court found that Kinney possessed "professional standing, reputation, and ability in employment cases" based on 30 years of experience and FSU's general counsel's affidavit regarding Kinney's experience and expertise. CMDA nevertheless argues that Kinney lacked the requisite ability to conduct an employment defense. To support its argument, CMDA claims that, on the record at a hearing, Kinney misstated the current Michigan law regarding implied contracts for employment. But a careful review of the record demonstrates that Kinney did not offer any explanation about Michigan law and merely argued that CMDA had failed to provide any caselaw to support its position regarding implied contracts.[5] Therefore, CMDA has not established the trial court's

---

[5] In addition, CMDA claims that Kinney erroneously argued that CMDA "*purposefully filed [Plaintiffs' complaint] in the wrong jurisdiction.*" (Emphasis and brackets in CMDA's brief on appeal.) Because CMDA provides no citation to the record in support of this claim, it is abandoned. *Houghton*, 256 Mich App at 339-340. In any event, we again note that Kinney's motion to change venue was successful.

finding regarding Kinney's ability was clearly erroneous and the trial court did not abuse its discretion by declining to reduce the award on this ground.

Fourth, citing MRPC 1.5(a)(4) and *Wood* factor 3, the trial court found that Kinney's representation led to a positive result for defendants—noting the case "was dismissed without dispositive motion, and it is not being appealed." CMDA argues that Kinney was not responsible for the result because CMDA, not Kinney, requested dismissal. But again, CMDA's argument is inconsistent with the record. Following Bonacci's deposition, Kinney, on defendants' behalf, moved for entry of an order granting judgment for defendants, and CMDA, on plaintiffs' behalf, moved for voluntary dismissal. The trial court granted Kinney's motion and denied CMDA's motion. Therefore, it was not clearly erroneous to credit Kinney for the result achieved and the trial court did not abuse its discretion by declining to reduce the award on this ground.

Fifth, citing *Wood* factor 4, the trial court found that, based on the frivolous legal and factual claims, length of the proceedings, motions, briefing, and discovery requests, this case was "significantly more complicated than the typical employment case." Although CMDA claims Kinney's billing was excessive, on appeal citing the 19 hours billed to answer the Court of Claims complaint and 49.95 hours billed to respond to plaintiffs' motion for disqualification, the trial court rejected similar allegations of excessive billing in its opinion, reasoning that CMDA's frivolous filings and misrepresentations[6] required Kinney to engage in a meticulous review of the case and made the case "exceedingly time-consuming."[7] CMDA has not established that the trial court's finding that Kinney's billing was not excessive was clearly erroneous and the trial court did not abuse its discretion by declining to reduce the award on this ground.

Last, CMDA challenges the award of costs because defendants did not offer any receipts to document the costs aside from Kinney's billing records. But, again, the trial court found credible Kinney's testimony that she did not "pad the bill." Accordingly, we are not left with a definite and firm conviction that a mistake was made regarding the costs for trial court proceedings.

---

[6] In particular, the trial court cited misrepresentations it had found CMDA had made in its motion to disqualify the judge from the case, including, for example, statements that the judge had "deeply rooted relationships with multiple board members" when he was actually only acquainted with one member and did not know who the other members of defendant Board were.

[7] CMDA's reliance on *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76; 795 NW2d 205 (2010), where this Court found that the trial court improperly reduced the attorney's fees by 46 percent, is misplaced. Just as the attorney's billing records in *McNeel* were "legally sufficient" and the attorney's testimony supported the hours billed, here, the trial court found Kinney's testimony credible that she did not pad her bill.

IV

We affirm the portions of the trial court's orders finding CMDA jointly and severally liable for attorney fees and costs incurred during trial court proceedings under MCR 2.114 and MCL 600.2591, but we reverse the portions of the trial court's orders awarding appellate attorney fees and costs, and we remand for entry of an order consistent with this opinion. We do not retain jurisdiction. No costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Kurtis T. Wilder