# Court of Appeals, State of Michigan

## ORDER

ASSOCIATED BUILDERS AND CONTRACTORS OF MICHIGAN
V STATE TREASURER

Docket No.    369314

LC No.        23-000120-MB

Michael F. Gadola
Presiding Judge

Christopher M. Murray

Michael J. Kelly
Judges

The March 7, 2024 opinion is hereby VACATED, and a new opinion is attached. The new opinion corrects typographical errors in the original.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 8, 2024
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ASSOCIATED BUILDERS AND CONTRACTORS OF MICHIGAN, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., SENATOR EDWARD MCBROOM, REPRESENTATIVE DALE ZORN, RODNEY DAVIES, KIMBERLEY DAVIES, OWEN PYLE, WILLIAM LUBAWAY, BARBARA CARTER, and ROSS VANDERKLOK,

Plaintiffs-Appellants,

v

STATE TREASURER,

Defendant-Appellee.

FOR PUBLICATION
March 8, 2024
9:00 a.m.

No. 369314
Court of Claims
LC No. 23-000120-MB

Before: GADOLA, C.J., and MURRAY and M.J. KELLY, JJ.

PER CURIAM.

In this action seeking declaratory and mandamus relief with respect to the Michigan income tax rate, plaintiffs, Associated Builders and Contractors of Michigan (ABC), National Federation of Independent Business, Inc. (NFIB), Senator Edward McBroom, Representative Dale Zorn, Rodney Davies, Kimberley Davies, Owen Pyle, William Lubaway, Barbara Carter, and Ross VanderKlok, appeal as of right a December 21, 2023 order granting a motion for summary disposition filed by defendant, the State Treasurer, and denying plaintiffs' countermotion for summary disposition and motion for a show-cause order. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

We will utilize the same terminology as the trial court in referring to the parties. ABC and NFIB are advocacy groups and will be referred to collectively as advocacy group-plaintiffs. Senator McBroom and Representative Zorn are members of the Michigan Legislature, and will be referred to collectively as legislator-plaintiffs. The remaining six plaintiffs are individual taxpayers and will be referred to collectively as individual taxpayer-plaintiffs. The general term

plaintiffs will be used in reference to all plaintiffs. Defendant is the head of the Michigan Department of Treasury.

This case concerns a dispute over the proper interpretation of MCL 206.51(1), which sets the Michigan income tax rate. The central question is whether a reduction of the rate from 4.25% to 4.05% for tax year 2023 means that 4.05% becomes the new default rate for tax year 2024 and future tax years or if the rate instead reverts to a default rate of 4.25% subject to a possible reduction each year if certain economic conditions exist. Plaintiffs assert that, in light of the reduction of the rate from 4.25% to 4.05% for tax year 2023, the income tax rate is now capped at 4.05% unless or until the Legislature modifies the rate. The trial court rejected plaintiffs' position and agreed with defendant that 4.25% remains the default rate, subject to a possible reduction each year on the basis of certain economic conditions that statutorily trigger a reduction.

MCL 206.51(1) provides, in relevant part:

(1) For receiving, earning, or otherwise acquiring income from any source whatsoever, there is levied and imposed under this part upon the taxable income of every person other than a corporation a tax at the following rates in the following circumstances:

(a) On and after October 1, 2007 and before October 1, 2012, 4.35%.

(b) Except as otherwise provided under subdivision (c), on and after October 1, 2012, 4.25%.

(c) For each tax year beginning on and after January 1, 2023, if the percentage increase in the total general fund/general purpose revenue from the immediately preceding fiscal year is greater than the inflation rate for the same period and the inflation rate is positive, then *the current rate* shall be reduced by an amount determined by multiplying *that rate* by a fraction, the numerator of which is the difference between the total general fund/general purpose revenue from the immediately preceding state fiscal year and the capped general fund/general purpose revenue and the denominator of which is the total revenue collected from this part in the immediately preceding state fiscal year. For purposes of this subdivision only, the state treasurer, the director of the senate fiscal agency, and the director of the house fiscal agency shall determine whether the total revenue distributed to general fund/general purpose revenue has increased as required under this subdivision based on the comprehensive annual financial report prepared and published by the department of technology, management, and budget in accordance with section 23 of article IX of the state constitution of 1963. The state treasurer, the director of the senate fiscal agency, and the director of the house fiscal agency shall make the determination under this subdivision no later than the date of the January 2023 revenue estimating conference conducted pursuant to sections 367a through 367f of the management and budget act, 1984 PA 431, MCL 18.1367a to 18.1367f, and the date of each January revenue estimating conference conducted each year thereafter. . . . [Emphasis added.]

The current version of MCL 206.51(1)(c) was added by the Legislature in 2015. See 2015 PA 180. As plaintiffs and the trial court both recognized, there have been multiple amendments of MCL 206.51 since 2015, but those amendments did not alter the relevant language and are not material to this case. See 2016 PA 266; 2018 PA 588; 2020 PA 75; 2023 PA 4.

The trial court summarized the parties' respective positions regarding the meaning of the phrase "the current rate" in MCL 206.51(1)(c):

> In plaintiffs' view, "the current rate" means the "most recent" rate, or the rate that is in effect when the analysis outlined in MCL 206.51(1)(c) is conducted. Because the tax rate was reduced to 4.05% for tax year 2023 based on a determination that the economic conditions outlined in the statute were met, plaintiffs argue that the 4.05% tax rate is the default rate for all subsequent years. Defendant maintains that the phrase "the current rate" refers to the 4.25% rate in Subsection (1)(b), which took effect beginning on October 1, 2012. So, in defendant's view, any reductions in the tax rate based on the economic conditions outlined in Subsection (1)(c) are temporary, and the tax rate reverts back to 4.25% for each tax year.

On March 22, 2023, defendant requested an opinion from the Michigan Attorney General "regarding whether the individual income tax rate reduction under MCL 206.51(1)(c) is temporary (i.e., for one year only) or permanent (i.e., for all subsequent years)." Stated differently, defendant inquired: "If the income tax rate for a particular year is reduced under MCL 206.51(1)(c), does the income tax rate return to 4.25% as described in MCL 206.51(1)(b) in the subsequent year, or does the rate remain at the reduced rate calculated under MCL 206.51(1)(c)?" The next day, the Attorney General issued a formal opinion concluding "that any individual income tax rate reduction under MCL 206.51(1)(c) is temporary (i.e., for one year only) and if the income tax for a particular year is reduced under MCL 206.51(1)(c), it returns to 4.25% in the subsequent year, as described in MCL 206.51(1)(b)." OAG, 2023, No. 7320, p 4 (March 23, 2023).

On March 29, 2023, defendant announced that the 2023 income tax rate would decrease from 4.25% to 4.05% for one year only. Defendant noted that this announcement followed the release of the state's 2022 Annual Comprehensive Financial Report, and was in part based on the Attorney General's legal opinion.

One day later, the Department of Treasury issued a notice to taxpayers that the statutory conditions for a reduction in the 2023 income tax rate had been met and that the income tax rate for the 2023 tax year would be reduced to 4.05%. The notice further stated that the withholding rate tables for the 2023 tax year would not be updated to reflect the revised tax rate.

Plaintiffs subsequently commenced this litigation by filing a two-count complaint against defendant. In Count I, plaintiffs requested declaratory relief. In particular, plaintiffs asked for "an order declaring that MCL 206.51(1)(c)'s definition of current means 'most recent,' thereby requiring the income tax rate be capped at 4.05% until such time as MCL 206.51(1)(c) is subsequently triggered" again, thereby further lowering the cap. In Count II, plaintiffs sought a writ of mandamus requiring defendant to apply plaintiffs' interpretation of MCL 206.51(1)(c) to the current and future tax years. As the trial court noted, plaintiffs later clarified in their summary disposition motion that the request for declaratory relief pertained only to individual taxpayer-

plaintiffs as well as to advocacy group-plaintiffs in their role as "membership organizations that have individual taxpayer members." Plaintiffs further clarified that the mandamus claim was being asserted by legislator-plaintiffs and by advocacy group-plaintiffs in their role as "advocacy organizations." In conjunction with their complaint, plaintiffs moved ex parte for an order to show cause why a writ of mandamus should not be issued. Because the case was being actively litigated, that ex parte request was denied.

Defendant filed a motion for summary disposition in lieu of an answer. Defendant sought summary disposition under MCR 2.116(C)(4), (8), and (10). Defendant argued that the trial court lacked subject-matter jurisdiction because plaintiffs' complaint was untimely under MCL 205.22(1), which requires a taxpayer's appeal in the Court of Claims from an assessment, decision, or order of the Department of Treasury to be filed within 90 days. Defendant next contended that legislator-plaintiffs and advocacy group-plaintiffs lacked standing because they suffered no specialized injury and were merely arguing that their own view of the law was not being followed. Defendant argued that the case was not ripe for adjudication because the tax rate for tax year 2024 would not be set until after a revenue estimating conference that was to be held in January 2024. Defendant contended that mandamus was improper because plaintiffs lacked a clear legal right to the performance of a duty; defendant's duty was to work with the House and Senate Fiscal Agencies for the January revenue conference rather than to set the rate herself. With respect to the merits, defendant argued that the text of MCL 206.51(1)(b) and (c) reflects that 4.25% is the default income tax rate for each year in which the exception or economic contingency is not satisfied and that plaintiffs' interpretation would cause the rate to continue decreasing every year in which the contingency was satisfied until the rate was reduced to zero.

Plaintiffs in turn filed a countermotion for summary disposition under MCR 2.116(C)(9) and (10), arguing that the trial court had subject-matter jurisdiction. The limitation period set forth in MCL 205.22(1) was inapplicable because plaintiffs were not appealing an assessment, decision, or order of the Department of Treasury. Legislator-plaintiffs had standing because they were entitled under Const 1963, art 4, § 31 to a precise revenue estimate for budget purposes and thus needed to know the correct income tax rate. Advocacy-group plaintiffs likewise needed accurate revenue estimates when advocating for their respective members. The case was ripe for adjudication because the 2023-2024 fiscal year budget had been passed by the Legislature and was affected by defendant's interpretation of MCL 206.51(1). Individual taxpayer-plaintiffs would soon have to decide whether to challenge assessments. With respect to the merits, plaintiffs argued that the 2023 rate reduction made pursuant to MCL 206.51(1)(c) is to remain in place until the rate is lowered again, thereby setting that new lower rate as the new cap. Plaintiffs contended that the rate was unlikely to decrease to zero because revenue goes down when tax rates are lowered, thus making it less likely that the contingency in MCL 206.51(1)(c) will be triggered. A tax rate of zero would not be unreasonable because Michigan had no broad-based income tax until 1967. Plaintiffs concluded that mandamus is proper because defendant has a clear legal duty to execute the law correctly.

On December 21, 2023, the trial court issued an opinion and order granting defendant's motion for summary disposition and denying plaintiffs' countermotion for summary disposition and motion for a show-cause order. The trial court rejected defendant's argument that the court lacked jurisdiction due to plaintiffs' failure to file a timely appeal under MCL 205.22(1),as plaintiffs were not appealing an adverse tax decision, assessment, or order of the Department of

Treasury. The Department of Treasury's March 29, 2023 announcement and March 30, 2023 notice were not tax assessments, orders, or decisions. Plaintiff's lawsuit was an original action requesting declaratory and mandamus relief; it was not an appeal of an agency's order or decision. Therefore, "MCL 205.22 did not apply to plaintiffs' claims, and plaintiffs were not subject to the time restrictions outlined in that statute."

Next, the trial court agreed with defendant that legislator-plaintiffs and advocacy group-plaintiffs lacked standing to challenge defendant's interpretation of MCL 206.51(1)(c). The court discerned a lack of support for legislator-plaintiffs' contention that they were entitled to precise revenue estimates. The court stated that Const 1963, art 4, § 31 "simply requires that the Legislature estimate revenues and refrain from passing an appropriations bill that exceeds the revenue estimates." The court explained that "the budget process involves numerous steps, including the revenue estimating conference, and estimates are provided throughout the year." Legislator-plaintiffs had "not met their heavy burden to establish a specialized interest peculiar to them." Advocacy group-plaintiffs had identified no legal source that would grant them standing, and offered no support for a conclusion that they had a specialized injury or a legally protected interest distinct from the public. Legislator-plaintiffs and advocacy group-plaintiffs thus lacked standing.

Next, the trial court agreed with defendant's argument that plaintiffs' claims were not ripe. The court noted that "the tax rate for the 2024 tax year has not been determined." "[A]lthough defendant (and the Attorney General) have opined that the tax rate will revert back to 4.25% for the 2024 tax year, a determination whether to reduce that rate under the exception outlined in MCL 206.51(1)(c) may occur as late as the January 2024 revenue estimating conference (for 2023, the new rate was not announced until late March 2023)."

> So, at this stage, we do not know if the 2024 tax rate will be 4.25%, 4.05%, or some other rate. The rate may even be *lower* than 4.05%. Therefore, it is not clear whether (and to what extent) the 2024 tax rate will impact the 2023-2024 fiscal-year budget. And no individual taxpayer-plaintiff has paid income tax, had any income tax withheld, or received a tax assessment based on the 2024 tax rate. As even plaintiffs acknowledge, defendant's interpretation of the 2024 tax rate will not begin to affect Michigan taxpayers until at least January 1, 2024. Thus, while plaintiffs argue that they can request forward-looking relief, this [c]ourt cannot craft a remedy without knowledge of what the 2024 tax rate will be. Plaintiffs' claims are unripe.

Nonetheless, because plaintiffs' claims may become ripe in the near future, the trial court proceeded to "analyze the merits of plaintiffs' claims in the event that the tax rate reverts back to 4.25%." The trial court agreed with defendant's position on the merits. The 4.25% rate set forth in MCL 206.51(1)(b) is the default rate that applies each year unless the triggering conditions for a reduction as set forth in MCL 206.51(1)(c) are met. The court explained, "[A] determination must be made each year whether the triggering conditions are met to lower the income tax rate." The phrase "current rate" in MCL 206.51(1)(c) means the rate existing at the present time, which is the 4.25% default rate that remains in effect each year unless the triggering events for a reduction specified in MCL 206.51(1)(c) occur. The court explained that this understanding of the statutory

-5-

text does not render the Legislature's use of the word "current" superfluous because the Legislature may amend the statute to set a new current rate.

The trial court found persuasive "defendant's argument that under plaintiffs' interpretation, the tax rate would continue to decrease each time the condition in Subsection (1)(c) is triggered, which could ultimately reduce the income tax rate to zero." The court stated that the text of MCL 206.51 did not reflect a legislative intent to effectuate "a continuous reduction in the income tax rate."

The trial court therefore concluded that neither declaratory nor mandamus relief was warranted. Plaintiffs had acknowledged that their request for mandamus relief was limited to legislator-plaintiffs and advocacy group-plaintiffs, neither of which had standing. "[N]either of these sets of plaintiffs have established a clear legal right to 'correct information' about the income tax rate," and plaintiffs had "not articulated a clear legal duty to implement plaintiffs' interpretation of the statute." The court stated that, because it was granting summary disposition to defendant, plaintiffs' motion for a show-cause order was denied.

On January 9, 2024, plaintiffs filed a claim of appeal. On January 23, 2024, plaintiffs filed a bypass application for leave to appeal in the Michigan Supreme Court. On January 31, 2024, our Supreme Court denied the bypass application for leave to appeal and directed this Court "to issue an abbreviated briefing schedule and to issue a decision no later than Monday, March 11, 2024." *Associated Builders & Contractors of Mich v Eubanks*, 1 NW3d 290, 290 (Mich, 2024). On February 1, 2024, this Court set an abbreviated briefing schedule and ordered that the appeal would be decided without oral argument. *Associated Builders & Contractors of Mich v State Treasurer*, unpublished order of the Court of Appeals, entered February 1, 2024 (Docket No. 369314). The parties filed their briefs in accordance with the schedule.

II. ANALYSIS

A. SUBJECT-MATTER JURISDICTION

Plaintiffs argue that MCL 205.22(1) does not deprive this Court of subject-matter jurisdiction, relying on the trial court's reasoning rejecting defendant's argument below. But defendant does not address this issue on appeal or otherwise challenge this Court's jurisdiction. Because this issue is addressed only by plaintiffs, who were not aggrieved by the trial court's ruling on this issue, there is no need to address it. See MCR 7.203(A) (this Court "has jurisdiction of an appeal of right filed by an aggrieved party . . ."); *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006) ("[A] litigant on appeal must demonstrate an injury arising from . . . the actions of the trial court . . . ."). Nonetheless, because this issue involves the question of subject-matter jurisdiction, we will briefly address it. See *Clohset v No Name Corp*, 302 Mich App 550, 560; 840 NW2d 375 (2013) (noting that "all courts must upon challenge, or even sua sponte, confirm that subject-matter jurisdiction exists") (quotation marks, brackets, and citations omitted).

The issue of subject-matter jurisdiction is reviewed de novo. *Id.* at 559. A decision on a motion for summary disposition is reviewed de novo. *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 358; 1 NW3d 373 (2022). "Summary disposition under MCR 2.116(C)(4) is

proper when a 'court lacks jurisdiction of the subject matter.' " *Id.*, quoting MCR 2.116(C)(4). "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction." *Wells Fargo Rail Corp*, 344 Mich App at 358 (quotation marks and citation omitted). Questions of statutory interpretation are also reviewed de novo. *Id.* Unambiguous statutory language must be applied as written. *Id.*

"Subject-matter jurisdiction refers to a court's power to act and authority to hear and determine a case." *Usitalo v Landon*, 299 Mich App 222, 228; 829 NW2d 359 (2012). "Subject-matter jurisdiction describes the types of cases and claims that a court has authority to address." *Id.* (quotation marks, brackets, and citation omitted).

> Jurisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial. [*Id.* (quotation marks and citations omitted).]

> MCL 205.22(1) provides, in relevant part:

> A taxpayer aggrieved by an assessment, decision, or order of the department may appeal the contested portion of the assessment, decision, or order to the tax tribunal within 60 days, or to the court of claims within 90 days after the assessment, decision, or order. The uncontested portion of an assessment, order, or decision shall be paid as a prerequisite to appeal. . . .

MCL 205.22(4) states, "The assessment, decision, or order of the department, if not appealed in accordance with this section, is final and is not reviewable in any court by mandamus, appeal, or other method of direct or collateral attack." MCL 205.22(5) provides:

> An assessment is final, conclusive, and not subject to further challenge after 90 days after the issuance of the assessment, decision, or order of the department, and a person is not entitled to a refund of any tax, interest, or penalty paid pursuant to an assessment unless the aggrieved person has appealed the assessment in the manner provided by this section.

Defendant argued below that the trial court lacked subject-matter jurisdiction because plaintiffs did not file their complaint within 90 days of the March 29, 2023 announcement or March 30, 2023 notice to taxpayers issued by the Department of Treasury. As the trial court correctly observed, however, the announcement and notice were not tax assessments on plaintiffs. Nor did the announcement or notice constitute an order or decision of the Department of Treasury, such as a decision to uphold a tax assessment. As the trial court reasoned:

> At this time, defendant has not assessed any tax against any of the individual plaintiffs for the 2024 tax year. Rather, plaintiffs are requesting declaratory and mandamus relief, on a prospective basis, regarding defendant's interpretation of the

tax rate for tax year 2024. Plaintiffs' lawsuit is an original action before the [c]ourt, rather than an appeal of an agency's order or decision. Defendant has not cited any legal source that would extend the application of MCL 205.22 to a notice announcing defendant's anticipated tax policy for a future tax year.

The trial court's analysis is sound. Plaintiffs were not subject to the time restrictions set forth in MCL 205.22(1) because they were not appealing an assessment, decision, or order of the Department of Treasury. MCL 205.22 does not deprive the trial court or this Court of jurisdiction.

## B. STANDING

Plaintiffs argue that legislator-plaintiffs and advocacy group-plaintiffs have standing. We conclude that it is unnecessary to reach this issue.

If at least one plaintiff has standing, then the alleged lack of standing of other plaintiffs in the case does not prevent a court from reaching the merits. See *House Speaker v State Admin Bd*, 441 Mich 547, 561; 495 NW2d 539 (1993) ("Having determined that at least one of the plaintiffs has standing, we turn next to [the merits of the case]."). Although the trial court agreed with defendant below that legislator-plaintiffs and advocacy group-plaintiffs lacked standing, defendant has not challenged the standing of individual taxpayer-plaintiffs, which we take as conceding that individual taxpayer-plaintiffs have standing.

Moreover, standing is not a jurisdictional issue, and should be raised by one of the parties in order to be put in issue. In *In re Pollack Trust*, 309 Mich App 125, 153; 867 NW2d 884 (2015), the appellant "argue[d] that the issue of standing may be raised for the first time on appeal because it pertains to jurisdiction." This Court rejected that argument:

> "Subject-matter jurisdiction and standing are not the same thing. Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). "Standing, on the other hand, relates to the position or situation of the plaintiff relative to the cause of action and the other parties at the time the plaintiff seeks relief from the court." *Dep't of Social Servs v Baayoun*, 204 Mich App 170, 174; 514 NW2d 522 (1994). Therefore, the decision regarding whether a plaintiff has standing will not affect the trial court's jurisdiction over the subject matter. *Glen Lake*[*-Crystal River Watershed Riparians v Glen Lake Ass'n*], 264 Mich App [523,] 528[; 695 NW2d 508 (2004)]. Because this issue involves standing and not jurisdiction, [the appellant] should have raised it in the trial court. See *id*. [*In re Pollack Trust*, 309 Mich App at 153-154.]

In light of defendant's effective concession that individual taxpayer-plaintiffs have standing, we need not determine whether legislator-plaintiffs and advocacy group-plaintiffs have standing.

## C. RIPENESS

Plaintiffs next argue that the case is ripe for adjudication. We agree.

Questions of ripeness are reviewed de novo. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017). A trial court's ruling on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendant moved for summary disposition pursuant to MCR 2.116(C)(4), (8), and (10), but the trial court did not specify the subrule under which it granted summary disposition. Although there are "inconsistencies among published decisions of this Court and more recent unpublished decisions regarding whether subrule (C)(4) supports dismissal for failure of justiciability grounds such as ripeness . . . ," *Van Buren Charter Twp*, 319 Mich App at 543, the parties do not address the proper subrule under which to review this issue, which is not dispositive in any event. Review is proper under MCR 2.116(C)(8) because the trial court did not rely on matters outside the pleadings with respect to this issue. See *Tripp v Baker*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360960); slip op at 7; *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013) (reviewing a ripeness issue under MCR 2.116(C)(8)).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*El-Khalil*, 504 Mich at 159-160 (citations and emphasis omitted).]

"The doctrine of ripeness is closely related to the standing doctrine in that it focuses on the timing of the action." *Van Buren Charter Twp*, 319 Mich App at 553 (quotation marks and citation omitted). "The ripeness doctrine requires that a party has sustained an actual injury to bring a claim." *Id*. at 554. "A party may not premise an action on a hypothetical controversy." *Id*. "The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained." *King*, 303 Mich App at 188 (quotation marks and citation omitted). "A claim that rests on contingent future events is not ripe." *Id*. The timing of the action is thus of primary importance in considering the issue of ripeness. *Id*.

In concluding that the issue was not ripe, the trial court noted that, at the time of the trial court's December 21, 2023 decision, "the tax rate for the 2024 tax year has not been determined." The court continued:

> So, at this stage, we do not know if the 2024 tax rate will be 4.25%, 4.05%, or some other rate. The rate may even be *lower* than 4.05%. Therefore, it is not clear whether (and to what extent) the 2024 tax rate will impact the 2023-2024 fiscal-year budget. And no individual taxpayer-plaintiff has paid income tax, had any income tax withheld, or received a tax assessment based on the 2024 tax rate. As even plaintiffs acknowledge, defendant's interpretation of the 2024 tax rate will not begin to affect Michigan taxpayers until at least January 1, 2024. Thus, while plaintiffs argue that they can request forward-looking relief, this [c]ourt cannot craft a remedy without knowledge of what the 2024 tax rate will be. Plaintiffs' claims are unripe.

A critical fact has changed since the time of the trial court's decision. On February 28, 2024, the Department of Treasury announced that the individual income tax rate for 2024 will be 4.25%. That is, the Department of Treasury has now determined that the conditions for reducing the rate under MCL 206.51(1)(c) have not been satisfied for the 2024 tax year. In light of this determination, plaintiffs' claims do not rest on contingent future events or a hypothetical controversy. We therefore conclude that the case is ripe for adjudication.

D. MERITS

Turning to the merits, plaintiffs argue that the reduction of the income tax rate to 4.05% under MCL 206.51(1)(c) for the 2023 tax year has created a permanent cap on the tax rate for subsequent tax years. We disagree.

A trial court's ruling on a motion for summary disposition is reviewed de novo. *El-Khalil*, 504 Mich at 159. Defendant moved for summary disposition pursuant to, *inter alia*, MCR 2.116(C)(8) and (10). Review is proper under MCR 2.116(C)(8) because the trial court did not rely on matters outside the pleadings with respect to this issue. *Tripp*, ___ Mich App at ___; slip op at 7.

Questions of statutory interpretation are also reviewed de novo. *Wells Fargo Rail Corp*, 344 Mich App at 358. Unambiguous statutory language must be applied as written. *Id*.

> This Court considers statutory provisions within the context of the whole statute and must give effect to every word, phrase, and clause to avoid an interpretation that would render any part of the statute surplusage or nugatory. When statutory terms are undefined, this Court interprets the terms according to their plain and ordinary meaning, considering the context in which the words are used, and may consult dictionary definitions if necessary to accomplish this task. [*O'Connor v Michigan*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360002); slip op at 2 (quotation marks, brackets, ellipsis, and citation omitted).]

Again, MCL 206.51(1) provides, in relevant part:

(1) For receiving, earning, or otherwise acquiring income from any source whatsoever, there is levied and imposed under this part upon the taxable income of every person other than a corporation a tax at the following rates in the following circumstances:

(a) On and after October 1, 2007 and before October 1, 2012, 4.35%.

(b) Except as otherwise provided under subdivision (c), on and after October 1, 2012, 4.25%.

(c) For each tax year beginning on and after January 1, 2023, if the percentage increase in the total general fund/general purpose revenue from the immediately preceding fiscal year is greater than the inflation rate for the same period and the inflation rate is positive, then *the current rate* shall be reduced by an amount determined by multiplying *that rate* by a fraction, the numerator of which is the

-10-

difference between the total general fund/general purpose revenue from the immediately preceding state fiscal year and the capped general fund/general purpose revenue and the denominator of which is the total revenue collected from this part in the immediately preceding state fiscal year. . . . [Emphasis added.]

Reading the statute as a whole and with the relevant terms in context, it is clear that the current default income tax rate is 4.25% under Subsection (1)(b), subject to the exception in Subsection (1)(c).

Subsection (1)(a) provides for a rate of 4.35% with definite start and end dates, i.e., that rate applies "[o]n and after October 1, 2007 and before October 1, 2012 . . . ." MCL 206.51(1)(a). By contrast, Subsection (1)(b) has no end date; that subsection provides for a rate of 4.25% "on and after October 1, 2012," "[e]xcept as otherwise provided" in Subsection (1)(c). The language of Subsection (1)(b) thus unambiguously indicates that the rate of 4.25% continues in effect, subject to the exception in Subsection (1)(c). See *Mich Ass'n of Home Builders v City of Troy*, 497 Mich 281, 286; 871 NW2d 1 (2015) (noting that the phrase "except as otherwise provided" indicates an exception to the statutory text). This reflects that 4.25% is the default rate that shall be modified if the exception of Subsection (1)(c) applies. There is no language in Subsection (1)(b) indicating that the 4.25% rate permanently expires when the exception in Subsection (1)(c) is triggered for a particular tax year.

Subsection (1)(c) begins by stating, "For each tax year beginning on and after January 1, 2023, . . . ." MCL 206.51(1)(c). This language indicates that an evaluation of whether the exception set forth in Subsection (1)(c) is triggered must be made each year, beginning on January 1, 2023. Subsection (1)(c) then continues by stating that "if" certain economic conditions are satisfied, then the "current rate" will be reduced pursuant to a formula specified in the statute. MCL 206.51(1)(c). That is, only when those conditions are satisfied will the "current rate" be reduced pursuant to the stated formula. See *In re Casey Estate*, 306 Mich App 252, 260; 856 NW2d 556 (2014) (consulting a dictionary to define "if" as "in case that; granting or supposing that; on condition that") (citation omitted). This further supports the view that 4.25% remains the default rate subject to reduction only if the triggering conditions are met.

Further, there is no language in Subsection (1)(c) to suggest that, when the exception is triggered, the reduced rate calculated pursuant to the statutory formula becomes a new permanent default rate that supersedes the default rate of 4.25% set forth in Subsection (1)(b). And such an interpretation would render nugatory the language of Subsection (1)(b) setting a rate of 4.25% subject to the exception in Subsection (1)(c). See *O'Connor*, ___ Mich App at ___; slip op at 2 (this Court avoids an interpretation that would render any part of the statute nugatory).

The parties have presented arguments regarding what is meant by the phrase "current rate" in the part of Subsection (1)(c) stating that, if the contingency is satisfied, then the "current rate" is to be reduced pursuant to the stated formula. The statute does not define the term. This Court may therefore consult dictionary definitions to discern the meaning of the term. *O'Connor*, ___ Mich App at ___; slip op at 2. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "current" to mean, *inter alia*, "occurring in or existing at the present time" and "most recent." Plaintiffs argue that "most recent" is the relevant definition and that the reduced 2023 income tax

rate of 4.05% is the most recent rate.  Defendant suggests that "existing at the present time" is the pertinent definition and that the default rate of 4.25% is the rate existing at the present time.

In *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 306-307; 952 NW2d 358 (2020), our Supreme Court addressed an issue of statutory interpretation in which the parties relied on different dictionary definitions of a statutory term.  Our Supreme Court explained:

> [I]n order to determine the most reasonable meaning of statutory language, such language cannot be read in isolation or in a manner disregardful of context; this Court will not extract words and phrases from within their context or otherwise defeat their import as drawn from such context.  A statute should be interpreted in light of the overall statutory scheme, and although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context.  [*Id*. at 307 (quotation marks, brackets, and citations omitted).]

We agree with the trial court that defendant's definition of "current" is a more appropriate understanding of this term as used in the statute.  The trial court cogently explained:

> Reading the term "current" as "existing at the present time," it becomes clear that Subsection (1)(b) sets the default rate on or after October 1, 2012, which remains in effect each year unless the triggering events in Subsection (1)(c) occur.  Reading the statute sequentially, Subsection (1)(a) is a rate with a definite start and end date.  Subsection (1)(b) outlines the current tax rate of 4.25% unless the conditions in Subsection (1)(c) trigger a reduction.  Subsection (1)(c) then provides for a reduction of the rate that exists at the present time (4.25%) if certain conditions are met.  The reference to "that rate" in Subsection (1)(c) refers to the "current" rate, which is the 4.25% rate outlined in Subsection (1)(b).

Plaintiffs suggest that this understanding of "current" renders the term superfluous because, if the rate reverts to 4.25% after a reduction, then the statute could have simply referred to "the rate" rather than "the current rate."  But as the trial court explained,

> plaintiffs' argument overlooks that the income tax rate has changed over time.  For example, before 2012, the tax rate was set at 4.35%.  MCL 206.51(1)(a).  The Legislature may amend the statute at any time to set a new "current rate."  As a hypothetical example, in 2024, the Legislature could amend the statute to set a new income tax rate of 4.15%.  If that were the case, then the 4.15% [rate] would become the "current rate" for purposes of Subsection (1)(c).

For this reason, we are not convinced by plaintiffs' argument that defendant's interpretation renders the word "current" superfluous.

We note an additional flaw in plaintiffs' reliance on the phrase "current rate."  That phrase is used in Subsection (1)(c) when referring to the reduction that occurs *if* the triggering conditions are satisfied.  But if the triggering conditions are *not* satisfied, then the reduction of the "current rate" does not occur, and there is no reason to consider that phrase.  For example, as explained earlier, the Department of Treasury has determined that the triggering conditions have not been

satisfied for the 2024 tax year. Given that determination, there will be no reduction of the "current rate" under Subsection (1)(c) for the 2024 tax year. The default rate of 4.25% thus applies regardless of what is meant by the phrase "current rate" because that phrase appears in Subsection (1)(c) in connection with the reduction that occurs only if the triggering conditions are met. Plaintiffs fail to address this point or to recognize that their primary argument for making the 2023 reduced rate of 4.05% permanent is premised on the meaning of a term, "current rate," that becomes relevant only *if* the contingency in Subsection (1)(c) is satisfied in a subsequent year.

In sum, the statute contains no language indicating a legislative intent to make the rate reduction under Subsection (1)(c) permanent. Plaintiffs' interpretation would make each reduction permanent and allow compounding reductions that could ultimately result in no income tax. This would render nugatory the statutory language providing for an income tax. See MCL 206.51(1) ("For receiving, earning, or otherwise acquiring income from any source whatsoever, there is levied and imposed under this part upon the taxable income of every person other than a corporation a tax at the following rates in the following circumstances: . . . ."). Plaintiffs suggest that recognizing this possible effect of compounding reductions amounts to making a policy argument in favor of an income tax. They note that Michigan did not have a broad-based income tax until 1967 and that some states currently do not have an income tax. We express no view regarding what is an appropriate policy on income taxation. Our analysis is based on the statutory text rather than policy considerations. As part of our textual analysis, we note that the statute contains language providing for an income tax and that plaintiffs' interpretation has the potential to render this language nugatory. This Court must "avoid an interpretation that would render any part of the statute surplusage or nugatory." *O'Connor*, ___ Mich App at ___; slip op at 2.

We also find unconvincing plaintiffs' reliance on previous legislation. Plaintiffs note that in 1983 PA 15, the Legislature used a specific numeric rate as the starting point for a formula for setting the income tax for certain years. Plaintiffs say that this sheds light on the Legislature's intent when enacting the current income tax statute in 2015 because the Legislature referred to the "current rate" rather than a specific numeric rate as it did in 1983 PA 15. Plaintiffs further assert that 1983 PA 15 shows that the Legislature knows how to limit a rate adjustment to a particular tax year. However, 1983 PA 15 is not useful in interpreting the current statute because the meaning of the current statutory language is clear and unambiguous. Our Supreme Court has noted that "to whatever extent courts correctly divined past legislatures' intents using previously enacted language, those intents should not guide our interpretation of the *unambiguous* language of the current versions of the statutes; the acts of past legislatures do not bind the power of successive legislatures to enact, amend, or repeal legislation." *People v Gardner*, 482 Mich 41, 65-66; 753 NW2d 78 (2008).

Plaintiffs further argue that any ambiguities in the language of MCL 206.51(1) should be resolved in their favor. See *Honigman Miller*, 505 Mich at 291 n 3 ("It is well settled that ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer.") (quotation marks and citation omitted). However, as explained, the statutory language is not ambiguous. There is thus no need to resort to the rule of resolving ambiguities in favor of the taxpayer.

Plaintiffs discuss legislative history, including staff analyses and some legislators' remarks during debates. "Resort to legislative history of any form is proper *only* where a genuine ambiguity exists in the statute. Legislative history cannot be used to create an ambiguity where one does not

otherwise exist." *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, 318 Mich App 338, 350 n 6; 897 NW2d 768 (2016), aff'd 502 Mich 695 (2018) (quotation marks, brackets, and citation omitted); see also *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 429-430 n 19; 987 NW2d 510 (2022) (noting that "there are often practical difficulties with discerning legislative intent from legislative history" and that "sources like bill analyses, committee reports, and floor debate, which may reflect the views of some group of legislators, are of dubious value"). Because the statute is unambiguous, there is no need to consult legislative history.

For all these reasons, plaintiffs are not entitled to declaratory or mandamus relief. As explained, plaintiffs' argument for how the statute should be interpreted is unpersuasive, and they have therefore failed to show that they have a clear legal right to performance of a specific duty *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (quotation marks and citation omitted).

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly